CC-1999-737                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Ruiz Ramos<br>        Peticionario<br><br>              v.<br><br>Alcaide Penitenciaría<br>Estatal de Río Piedras<br>        Recurrido | Certiorari<br><br>2001 TSPR 149<br><br>155 DPR _____ |

Número del Caso: CC-1999-737


Fecha: 30/octubre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional II


Juez Ponente:
                        Hon. Gilberto Gierbolini


Abogado de la Parte Peticionaria:
                        Lcdo. Jaime J. Fuster Zalduondo


Oficina del Procurador General:
                        Lcdo. Miguel A. Santana Bagur
                        Procurador General Auxiliar


Materia:  Habeas Corpus



        Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Ruiz Ramos

    Peticionario

       v.

Alcaide Penitenciaría          CC-1999-737    Certiorari
Estatal de Río Piedras

    Recurrido

**Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.**

San Juan, Puerto Rico, a 30 de octubre de 2001.

Nos corresponde determinar si la protección sobre el término máximo de seis (6) meses de detención preventiva contemplada por la Constitución de Puerto Rico le es aplicable a un imputado hallado judicialmente no procesable, quien se encuentra recluido en el Hospital de Psiquiatría Forense bajo tratamiento, en exceso del referido término. La respuesta a dicha interrogante es en la negativa.

I

El 17 de octubre de 1998 se presentó una denuncia en ausencia contra el señor Ramón Ruiz Ramos, imputándole la comisión del delito de

maltrato,[1] según tipificado en el Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989.[2]  Se ordenó el arresto del señor Ruiz Ramos y se le impuso una fianza por la suma de cinco mil dólares ($5,000).  El imputado fue arrestado el 19 de octubre de 1998.  Ese mismo día prestó la fianza y fue citado para la vista preliminar.  El imputado no compareció a la vista preliminar celebrada el 30 de octubre de 1998, razón por la cual el Tribunal determinó causa probable en su ausencia por infracción al Artículo 3.1 de la Ley Núm. 54, supra, y lo encontró incurso en desacato criminal,[3] ordenando su arresto e ingreso, fijándole una fianza por la suma de diez mil dólares ($10,000).[4]  La lectura de acusación fue señalada para el 18 de noviembre y el juicio para el 28 de diciembre de 1998.

El 5 de noviembre de 1998 se presentó una segunda denuncia contra el señor Ruiz Ramos, esta vez por infracción al Artículo 404 de la Ley Núm. 4 de 23 de junio de 1973, conocida como la "Ley de Sustancias Controladas de Puerto Rico", 24 L.P.R.A. sec. 2404.[5]  Se determinó causa probable para el arresto y se fijó una fianza por la suma de diez mil dólares ($10,000).[6] Ese mismo día, el señor Ruiz Ramos fue encarcelado al no prestar las referidas fianzas.[7]  La vista preliminar relativa al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico, supra, fue señalada para el 17 de noviembre de 1998.[8]  La representación legal del imputado presentó una moción[9] ante el Tribunal de Primera Instancia solicitando una evaluación sobre la condición mental del imputado, a los efectos de determinar si se

---

[1] Apéndice del recurso de Certiorari, pág. 33.

[2] Mejor conocida como la "Ley para la Prevención e Intervención con la Violencia Doméstica", 25 L.P.R.A. sec. 2404.

[3] Artículo 235 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4431.

[4] Apéndice del recurso de Certiorari, págs. 35, 36 y 38.

[5] Íd., pág. 34.

[6] Íd.

[7] Íd., pág. 38.

[8] Íd.

[9] Moción Solicitando Evaluación al Amparo de la Regla 240 de Procedimiento Criminal, Apéndice IV del recurso de Certiorari, pág. 39.

encontraba o no procesable.[10]  En virtud de lo anterior, la vista preliminar señalada para el 17 de noviembre de 1998 fue suspendida.[11]

Luego de varios incidentes procesales,[12] en la vista de procesabilidad celebrada el 15 de marzo de 1999, el magistrado determinó que el señor Ruiz Ramos no reunía los criterios médicos legales de procesabilidad.[13]  El Tribunal de Primera Instancia acogió la recomendación del doctor Rafael Cabrera Aguilar, psiquiatra del Estado, y ordenó el traslado inmediato del imputado al Hospital de Psiquiatría Forense para que fuera evaluado y recibiera tratamiento.[14]  La última vista sobre procesabilidad del señor Ruiz Ramos se celebró el 7 de junio de 1999, en la que el Tribunal de Primera Instancia determinó que su situación permanecía inalterada.  Por consiguiente, el proceso judicial en contra del imputado, aquí peticionario, permanece suspendido en aras de salvaguardar su derecho a un debido proceso de ley.

El 11 de mayo de 1999 la representación legal del señor Ruiz Ramos solicitó del Tribunal de Primera Instancia la excarcelación de éste, mediante la presentación de un recurso de hábeas corpus.[15]  Dicha petición se fundamentó en que alegadamente se le privó al peticionario de su libertad, en exceso del término de seis (6) meses dispuesto para detención preventiva, de conformidad con la Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico.  Mediante Resolución de 23 de junio de 1999, dicho Tribunal denegó el referido recurso, por entender que aunque el peticionario estaba privado de su libertad, éste no se encontraba en una institución

---

[10] De conformidad con la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 240.

[11] Apéndice IV del recurso de Certiorari, pág. 40.

[12] Dicha vista fue señalada originalmente para el 14 de diciembre de 1998. No obstante, fue suspendida en tres ocasiones, celebrándose finalmente el 15 de marzo de 1999.

[13] Apéndice del recurso de Certiorari, pág. 45.

[14] Íd.

[15] Apéndice IV del recurso de Certiorari, pág. 46.

correccional.[16]  Dicho Tribunal concluyó, que la privación de la libertad del imputado, aquí peticionario, no respondía a su inhabilidad  para prestar la fianza fijada en el caso.  Además, decidió que la privación de la libertad a la que está sujeto el peticionario no contraviene su presunción de inocencia, ya que su ingreso en el referido hospital no guarda relación con su condición de sumariado.[17]

Insatisfecho con dicha determinación, el imputado, aquí peticionario, recurrió ante el Tribunal de Circuito de Apelaciones, mediante el correspondiente recurso de certiorari.  Dicho Tribunal emitió dictamen con fecha de 23 de agosto de 1999, confirmando la resolución dictada por el Tribunal de Primera Instancia.  El Tribunal de Circuito de Apelaciones determinó, al igual que el Tribunal de Primera Instancia, que el peticionario no estaba ingresado en una institución correccional y que la privación de libertad de éste no está relacionada con una falta de recursos para poder prestar la fianza impuesta.  Expresó, que el propósito de la detención preventiva es garantizar la comparecencia del acusado a cualquier procedimiento posterior al arresto, en cambio su ingreso en el Hospital de Psiquiatría Forense sólo pretende proveerle tratamiento hasta que se encuentre procesable.  El Tribunal de Circuito de Apelaciones concluyó que el peticionario no es acreedor a lo solicitado, pues su situación planteaba realmente un asunto relacionado a su procesabilidad, en vista de su estado mental,[18] y no uno de detención preventiva en exceso de lo dispuesto por la Constitución de Puerto Rico.

Inconforme con dicho dictamen, el peticionario acude ante nos señalando como único error cometido por el Tribunal de Circuito de Apelaciones lo siguiente:

> Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al confirmar la resolución del Honorable [sic] Tribunal de Primera Instancia que denegó la petición de excarcelación solicitada por el peticionario de autos toda vez que el Sr. Ruiz Ramos permanece privado de libertad ilegalmente de acuerdo a [sic] la Constitución del Estado Libre Asociado de Puerto Rico.

---

[16] Íd., págs. 49-51.

[17] Íd.

[18] Conforme a la Regla 240 de Procedimiento Criminal, supra.

El peticionario invoca el Artículo II, Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico, el cual establece que el término de detención preventiva antes del juicio no excederá de seis (6) meses. Arguyó, que dicho término opera independientemente de la causa por la que no se haya celebrado el juicio.[19] Adujo, que a tenor con la definición de reclusión, según dispuesta por el Artículo 40 del Código Penal,[20] el peticionario está privado de su libertad, bajo la custodia del Estado en una institución adecuada. Alegó, que el hecho de que el imputado sea encontrado improcesable no significa que no pueda recibir la ayuda necesaria en la libre comunidad, o en una institución privada. Por otro lado, sostiene que si se demostrase que el imputado improcesable es un peligro para sí mismo o para la sociedad, existen disposiciones legales para que obtenga ayuda psiquiátrica, como el procedimiento de internación civil dispuesto por ley.[21] Sobre este particular, el peticionario plantea que al estar en detención preventiva en exceso de seis (6) meses sin celebrársele juicio, su internación en un hospital debe ser como consecuencia del procedimiento provisto por ley. Argumenta que el ingreso de una persona bajo la Regla 240 de Procedimiento Criminal, supra, está interrelacionado con la prohibición constitucional sobre detención preventiva, ya que, de lo contrario, el imputado no procesable estaría pagando indefinidamente por la alegada comisión de un crimen por el cual aún no se le ha adjudicado responsabilidad penal. Finalmente, arguye que el ingreso en un hospital bajo la Regla 240 de Procedimiento Criminal, supra, no es similar al ingreso como medida de seguridad, bajo el procedimiento de internación civil

---

[19] Recurso de Certiorari, pág. 14, citando la obra de David Rivé Rivera, Recursos Extraordinarios, 2da. Ed., Programa de Educación Continua, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1996, pág. 147.

[20] 33 L.P.R.A. sec. 3202.

[21] Recurso de Certiorari, pág. 12. A la fecha de presentación del presente recurso estaba vigente el Código de Salud Mental. Posteriormente, dicho Código fue derogado por la Ley Núm. 408 de 2 de octubre de 2000, mejor conocida como la "Ley de Salud Mental de Puerto Rico".

dispuesto por ley, ya que éstos últimos son casos donde la custodia puede ser por un período extenso.

El 14 de abril de 2000 emitimos una Resolución concediéndole a la parte recurrida el término reglamentario de treinta (30) días para que sometiera su alegato.  El 10 de mayo de 2000, el Procurador General presentó su alegato.  Mediante dicho escrito, el Procurador General sostiene, en síntesis, que el presente caso no está relacionado de forma alguna con la disposición constitucional sobre detención preventiva.[22]  Aduce que el peticionario no se encuentra sumariado por defecto de fianza, sino que está recluido en una institución hospitalaria, en virtud de mandato judicial, debido a que fue hallado no procesable.[23]  El Procurador General argumenta que el Estado tiene la obligación de auscultar si el imputado, aquí peticionario, puede recobrar, dentro de un futuro previsible, la capacidad mental para enfrentarse al juicio correspondiente, de lo contrario debe egresarlo, salvo que su internación sea indispensable a la luz del referido procedimiento dispuesto por ley.[24]

**Con el beneficio de ambas comparecencias, procedemos a resolver.**

II

El término de procesabilidad se refiere a la capacidad mental del acusado al momento de enfrentarse a la naturaleza y al procedimiento criminal en su contra.[25]  De este modo, el acusado puede ayudar a su abogado para lograr una buena defensa.[26]  La incapacidad mental de un acusado, en cuanto a los procedimientos que habrá de enfrentar, se visualiza por lo menos en dos situaciones distintas: (1) la incapacidad del acusado al momento de ocurrir

---

[22] Alegato de la parte recurrida, pág. 3.

[23] Íd., pág. 4.

[24] Íd., pág. 11.

[25] Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Forum, Vol. III, 1993, pág. 348.

[26] Íd.

los hechos, instante en el que nace su intención criminal y surge su responsabilidad penal; y (2) cuando el acusado, ya presentada la acusación o denuncia, va a ser sometido al proceso penal.[27]

La Regla 240 de Procedimiento Criminal, supra, dispone lo siguiente:

**REGLA 240. CAPACIDAD MENTAL DEL ACUSADO; PROCEDIMIENTO PARA DETERMINARLA**

(a) **Vista; peritos.** En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere base razonable para creer que el acusado está mentalmente incapacitado, inmediatamente suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes.

(b) **Efectos de la determinación.** Si como resultado de la prueba el tribunal determinare que el acusado está mentalmente capacitado, continuará el proceso. Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada. Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental del acusado permite la continuación del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el inciso (a) de esta regla, y determinará entonces si debe continuar el proceso.

(c) **Fiadores; depósito.** Si el tribunal ordenare la reclusión del acusado en una institución, según lo dispuesto en el inciso (b) de esta regla, quedarán exonerados sus fiadores, y de haberse verificado un depósito de acuerdo con la Regla 222, será devuelto a la persona que acreditare su autoridad para recibirlo.

(d) **Procedimiento en la vista preliminar.** Si el magistrado ante quien hubiere de celebrarse una vista preliminar tuviere base razonable para creer que el acusado está mentalmente incapacitado, suspenderá dicha vista y levantará un acta breve al efecto, de la cual dará traslado inmediato, con los demás documentos en autos, al secretario de la sala del Tribunal Superior correspondiente, ante la cual se celebrará una vista siguiendo lo dispuesto en el inciso (a) de esta regla. Si el tribunal determinare que el acusado está mentalmente capacitado, devolverá el expediente al magistrado o tribunal de origen, con su resolución, y los trámites de la vista preliminar continuarán hasta su terminación. Si el tribunal determinare lo contrario, actuará de conformidad con lo provisto en el inciso (b) de esta regla, sólo que a los efectos de la vista preliminar.

Del texto de la precitada regla no surge disposición alguna relativa al período que podría estar recluido el acusado de delito en una institución adecuada recibiendo tratamiento, cuando se ha determinado que no está

---

[27] Pueblo v. Castillo Torres, 107 D.P.R. 551, 555 (1978).

procesable.[28]   Luego de una determinación de esa naturaleza, si el tribunal tiene base razonable para creer que la condición mental del acusado permite la continuación del proceso, señalará una nueva vista en la que se dilucidará si debe continuar el procedimiento criminal en contra de éste.

**Uno de los efectos de una determinación de improcesabilidad, conforme a lo dispuesto en la Regla 240 de Procedimiento Criminal, <u>supra</u>, es que el acusado permanecerá bajo la jurisdicción del Tribunal.**[29]   Otro de sus efectos es la suspensión del procedimiento criminal, en aras de salvaguardar el derecho del acusado hallado judicialmente improcesable a un juicio justo, a tenor con la cláusula constitucional de debido proceso de ley. Ciertamente un imputado, cuya condición mental le impide comprender la naturaleza y objeto de los procedimientos en su contra, para consultar con su abogado y ayudar en su defensa, no puede ser sometido a juicio, pues constituiría una violación a la cláusula constitucional de debido proceso de ley.[30]   La suspensión del proceso criminal, en virtud de una determinación de improcesabilidad, pretende evitar la injusticia de requerirle a un acusado que enfrente un proceso criminal, cuando éste no está mentalmente capacitado para ayudar en su defensa; lo cual podría culminar en una convicción errónea.[31]   Mediante la referida suspensión, se promueve la confianza de la ciudadanía en el sistema judicial criminal, conservando su dignidad e integridad.[32]

---

[28]  La Regla 240 de Procedimiento Criminal, <u>supra</u>, no toma en cuenta el término de reclusión máximo establecido para el delito.   Por tanto, en casos de delitos que acarrean una pena de reclusión por un breve término, podría resultar muy oneroso plantear la improcesabilidad del imputado.   Véase, Chiesa Aponte, <u>op. cit.</u>, págs. 362-363.

[29]  Chiesa Aponte, <u>op. cit.</u>, págs. 362-363.

[30]  La Regla 239 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 239, dispone que ninguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada.   Lo contrario sería una violación al debido proceso de ley.   Véase, además, Chiesa Aponte, <u>op. cit.</u>, pág. 349; <u>Drope v. Missouri</u>, 420 U.S. 162 (1975); <u>Pate v. Robinson</u>, 383 U.S. 375 (1966).

[31]  Bruce J. Winick, <u>Reforming Incompetency to Stand Trial and Plead Guilty: A Proposal and a Response to Professor Bonnie</u>, 85 J. Crim. L.& Criminology 571, 575-576 (1995).

[32]  Íd.

Evaluada la disposición legal sobre la determinación de procesabilidad o improcesabilidad de un acusado para enfrentar los procedimientos criminales en su contra, nos resta determinar si es aplicable el término máximo de seis (6) meses de detención preventiva dispuesto por la Constitución de Puerto Rico para un imputado o acusado que fuere encontrado no procesable y se halla internado en una institución hospitalaria o de similar naturaleza.

III

La Sección 11 del Artículo II de la Constitución de Puerto Rico[33] establece la protección constitucional contra una detención preventiva en exceso de seis (6) meses.  Dicha disposición lee, en lo aquí pertinente, como sigue:

> Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.  **La detención preventiva antes del juicio no excederá de seis meses**.  Las fianzas y las multas no serán excesivas.  Nadie será encarcelado por deuda. (Énfasis nuestro.)

El término "detención preventiva" se refiere al período anterior al juicio, en el cual el acusado se encuentra detenido preventivamente (sumariado), por razón de no haber prestado la fianza impuesta, y en espera de que se le celebre el correspondiente proceso criminal.[34]

La protección constitucional contra una detención preventiva más allá de seis (6) meses, así como la disposición constitucional sobre juicio rápido, coinciden en su aspecto teleológico, a saber: **impedir la encarcelación prolongada de quien no ha podido prestar fianza**.[35]  El Estado tiene razones para tomar medidas que garanticen que el imputado no habrá de escapar, e incluso puede tomar medidas de protección social en

---

[33] 1 L.P.R.A., Documentos Históricos, Art. II, sec. 11.

[34] Pueblo v. González Vega, res. el 16 de marzo de 1999, 99 TSPR 21, 150 D.P.R. ___ (1999), 99 J.T.S. 27; Pueblo v. Figueroa Garriga, 140 D.P.R. 225, 232 (1996).

[35] Olga E. Resumil, Derecho Procesal Penal, New Hampshire, Ed. Equity, 1993, T. II, Sec. 25.4, pág. 249.

determinados casos.[36]  El Estado está facultado para condicionar la libertad del acusado antes del juicio.  Dicha autoridad descansa en la legitimidad del interés apremiante del Estado de asegurar la comparecencia de todo acusado al proceso (éste es el único propósito de la fianza).[37]

La prestación de fianza o la detención preventiva por un máximo de seis (6) meses constituyen consecuencias alternas de una determinación positiva de causa probable para el arresto.[38]  Si el acusado no presta la fianza impuesta, permanecerá recluido en una institución penitenciaria para garantizar su comparecencia a cualquier procedimiento ulterior.[39]  El término máximo de seis (6) meses de detención preventiva, por disposición constitucional, transcurre contra el Ministerio Público, quien tiene la obligación de iniciar con diligencia la celebración del juicio.[40] Transcurrido el referido término sin que se celebre el juicio, la detención preventiva es ilegal.[41]  Ello no significa que el acusado quedará exonerado del delito porque haya transcurrido dicho término; sino que el proceso criminal continuará y el juicio se celebrará con el acusado en libertad.[42] De dejarse en libertad un acusado detenido preventivamente en exceso de seis (6) meses, no constituye un error que justifique la revocación de una convicción y sentencia condenatoria.[43]  La única consecuencia del transcurso del mencionado término es que se puede lograr la excarcelación del acusado

---

[36] Chiesa Aponte, op. cit., Vol. II, pág. 447.

**[37] Pueblo v. Negrón Vázquez, 109 D.P.R. 265, 266-267 (1979).**

[38] Olga E. Resumil, op. cit., T. I, sec. 6.14, pág. 135.

[39] Íd., pág. 149.

[40] Íd.

[41] Pueblo v. Monge Sánchez, 122 D.P.R. 590, 595 (1988).

[42] Pueblo v. Cruz Román, 84 D.P.R. 451, 456 (1962); Pueblo v. Ortiz, 76 D.P.R. 247, 249 (1954).

[43] Pueblo v. Ortiz, supra, pág. 249.

mediante la presentación de un recurso de <u>hábeas corpus</u>, fundamentado en la ilegalidad de su detención preventiva.[44]

El referido precepto constitucional sobre la limitación de la detención preventiva constituye una restricción al poder de custodia del Estado en esos casos.[45] La referida protección constitucional instituye una garantía procesal contra posibles excesos de autoridad por parte del Estado, evitando que la restricción efectiva de la libertad, una vez determinada causa probable para arresto, resulte en un castigo anticipado por un delito que no se ha juzgado.[46]

La Convención Constituyente entendió razonable el término de seis (6) meses para que el Estado sometiera a juicio a aquellos acusados que, por no haber podido prestar fianza para su libertad provisional, permanecieran detenidos preventivamente en espera de la celebración del juicio.[47] La garantía constitucional que protege a todo acusado sumariado de una detención preventiva en exceso del término de seis (6) meses, fue inspirada por un propósito fundamental de política pública.[48] Sobre este particular, este Tribunal ha señalado lo siguiente:

> La Convención [Constituyente] obviamente estimó que un período mayor de detención en espera de juicio, en defecto de fianza, constituía un gravamen sobre el ciudadano que, presumiéndose inocente hasta el momento de recaer convicción, era restringido por el Estado –en el ejercicio de su poder de custodia– en el disfrute de su libertad personal, con el solo propósito de hacerle comparecer a juicio en su día. Consideró preferible rendir la custodia de un acusado después de ese período, antes que hacer vulnerable la integridad de su derecho a la presunción de inocencia –que también consagraba en la propia Constitución– si dejaba ilimitado el ejercicio de ese poder de custodia por la mera utilidad de que el Estado le tuviera disponible para llevarle al tribunal.[49]

---

[44] Íd. Véase, 3 Diario de Sesiones de la Convención Constituyente 1595 (1952). Véase además, Chiesa Aponte, <u>op. cit.</u>, Vol. II, pág. 462.

[45] Opinión del Juez Asociado señor Negrón Fernández, con la cual concurrieron el Juez Presidente señor Snyder y el Juez Asociado señor Sifre, en el caso de <u>Sánchez v. González</u>, 78 D.P.R. 849, 854-855 (1955).

[46] Íd.

[47] Diario de Sesiones, <u>supra</u>, pág. 1595.

[48] <u>Sánchez v. González</u>, <u>supra</u>, págs. 856-857.

[49] Íd.

Considerada la finalidad y los efectos de una determinación de improcesabilidad, así como el propósito del término máximo de seis (6) meses de detención preventiva, es forzoso concluir que un acusado hallado judicialmente improcesable, quien se encuentra internado en una institución adecuada del Estado recibiendo tratamiento médico, no es acreedor a una "excarcelación" a tenor con la referida disposición constitucional.

En el presente caso, el imputado, aquí peticionario, solicitó la celebración de una vista para determinar su procesabilidad, a tenor con la Regla 240 de Procedimiento Criminal, supra. Luego de haber sido declarado improcesable y trasferido al Hospital de Psiquiatría Forense del Estado para recibir tratamiento médico, pretende ser liberado planteando una violación al término máximo de seis (6) meses de detención preventiva. No le asiste la razón.

El peticionario no se encuentra detenido preventivamente. Como señaláramos anteriormente, el referido término de detención preventiva contemplado por la Constitución de Puerto Rico, constituye el máximo de tiempo previo al juicio, en el cual el acusado podría estar "sumariado" en espera de que se le celebre el correspondiente proceso criminal, por razón de no haber podido prestar la fianza que le fuera impuesta.[50] La reclusión del peticionario en el Hospital de Psiquiatría Forense obedece sólo a que fue hallado no procesable, conforme a las disposiciones de la Regla 240 de Procedimiento Criminal, supra, en respuesta a su solicitud. **Mientras el peticionario se encuentre no procesable, y esté recluido en una institución recibiendo tratamiento, no puede ser juzgado, convicto o sentenciado por consideraciones de debido proceso de ley.[51] Por lo tanto, éste no se encuentra sumariado en espera de la celebración del juicio, razón por la cual no le cobija la protección constitucional sobre el término máximo de detención preventiva.**

---

[50] Pueblo v. Figueroa Garriga, supra, pág. 772.

[51] Reglas 239 y 240 de Procedimiento Criminal, supra.

A tenor con lo anteriormente expuesto, concluimos que un imputado hallado improcesable no es acreedor de una excarcelación, por virtud de haber estado recluido en una institución hospitalaria recibiendo tratamiento médico en exceso del término para la detención preventiva de seis (6) meses dispuesto por la Constitución de Puerto Rico.

IV

No obstante, en casos como el presente, no podemos permitir una reclusión *ad infinitum* en una institución adecuada, bajo el fundamento de improcesabilidad de la Regla 240 de Procedimiento Criminal, supra. El acusado podría enfrentarse a un juicio varios años después de la comisión del delito, afectándose adversamente los procedimientos en términos de su futura defensa. Entre los varios aspectos que podrían afectarse están comprendidos la búsqueda de evidencia, localización y entrevista de testigos, entre otros; criterios holgadamente relevantes para la defensa del imputado.[52] De igual forma, podría afectarse el Ministerio Público en su deber de probar el caso. Sobre este particular, el Tribunal Supremo de Estados Unidos ha resuelto que un imputado de delito hallado improcesable no debe estar recluido en un hospital de psiquiatría en exceso de un tiempo razonable. La razonabilidad de dicho término dependerá de la probabilidad sustancial de que el imputado advenga capaz mentalmente para enfrentar los procedimientos criminales. En caso de que la capacidad mental del acusado permanezca en un estado de improcesabilidad, y no exista probabilidad sustancial de que advenga a estar capaz mentalmente, se debe liberar de la institución adecuada del Estado, donde recibe tratamiento, salvo que estén presentes circunstancias fácticas que **señalen** que debe ser internado involuntariamente bajo dicho procedimiento de internación civil.[53]

---

[52] Bruce J. Winick, Restructuring Competency to Stand Trial, 32 UCLA L. Rev. 921, 948 (1985).

[53] Jackson v. Indiana, supra. A tales efectos se debe presentar una petición a tenor con el procedimiento de internación civil dispuesto por la Ley de Salud Mental de Puerto Rico, supra. Los Artículos 4.13, 4.14 y 4.15 de la referida ley disponen sobre las peticiones para la internación civil de una

Consideraciones de debido proceso de ley y de igual protección de las leyes, impiden que el Estado recluya <u>indefinidamente</u> a un imputado hallado judicialmente no procesable, sin que estén presentes circunstancias fácticas que señalen la necesidad para ello.[54]  El Tribunal Supremo de Estados Unidos ha expresado sobre este asunto lo siguiente:

> We hold, consequently, **that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.  If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.** Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.  In light of differing state facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits.[55]  (Énfasis suplido.)

Ciertamente, el Estado tiene un interés legítimo de proteger a la comunidad de personas que por su condición mental representan un peligro para ésta.[56]  A tales efectos, existen normas estatutarias que proveen para la internación  de esas personas, mediante procedimientos de naturaleza civil, no punitiva.[57]  De otro lado, la persona sujeta a un mecanismo de

---

persona que cumpla con los criterios correspondientes.  Estas peticiones son las siguientes: detención temporera de veinticuatro horas como resultado de una observación personal; petición de ingreso involuntario por un máximo de quince días; y la petición para orden de extensión de ingreso involuntario.

[54] La Sección 7 del Artículo II de la Constitución de Puerto Rico dispone, en lo aquí pertinente, como sigue:

> Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes.   1 L.P.R.A., Documentos Históricos, Art. II sec. 7.

En similar forma prescriben las Enmiendas V y XIV de la Constitución de los Estados Unidos.

[55] <u>Jackson v. Indiana</u>, <u>supra</u>.

[56] <u>Addington v. Texas</u>, 99 S.Ct.1804, 1809, 441 U.S. 418, 426 (1979).

[57] El Tribunal Supremo de Estados Unidos ha avalado legislación que dispone para la internación civil involuntaria, cuando ha mediado un procedimiento adecuado y se siguen los estándares evidenciarios.  <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992); <u>Addington v. Texas</u>, <u>supra</u>, págs. 426-427.  Por

internación civil involuntaria, tiene un interés en que no se le restrinja su libertad sin un debido proceso de ley.  El Artículo 4.12 de la Ley de Salud Mental de Puerto Rico, supra, dispone que ninguna persona será internada involuntariamente a menos que exista prueba clara y convincente sobre los requisitos y la necesidad de la internación.[58]  El Estado no tiene un interés en internar involuntariamente a personas que realmente no constituyen un peligro o representen un riesgo inminente de causar daño, por razón de trastorno mental.[59]

Por otro lado, entendemos que un acusado que se encuentre improcesable no necesariamente implica que éste cumpla con los requisitos para ser hospitalizado mediante el procedimiento de internación civil contemplado en el Artículo 4.12 de la Ley de Salud Mental de Puerto Rico, supra.  Dichos requisitos atienden aquellas situaciones fácticas en las que la persona, cuya internación se solicita, presenta el riesgo inmediato que pueda infligirse daño a sí mismo, a otras personas, o a la propiedad, en la libre comunidad o en su seno familiar.[60]

---

ejemplo, en otro contexto, el Tribunal Supremo de Estados Unidos ha sostenido la constitucionalidad de estatutos que instituyen procedimientos de internación civil para ofensores sexuales violentos.  Kansas v. Hendricks, 117 S.Ct. 2072, 521 U.S. 346 (1997); Seling v. Bringham, 121 S.Ct. 727 (2001).

[58] Sobre este particular, el estándar de prueba clara y convincente que preceptúa el Artículo 4.12 de la referida ley, cumple con las exigencias del debido proceso de ley.  Foucha v. Louisiana, supra, pág. 76; Addington v. Texas, supra, págs. 432-433.

[59] Con relación al criterio de peligrosidad, véase el Artículo 1.03(pp) de la Ley de Salud Mental de Puerto Rico, supra.

[60] El Artículo 2.03 de la Ley de Salud Mental de Puerto Rico, supra, establece los criterios que debe reunir toda persona para que el tribunal ordene tratamiento compulsorio, ambulatorio o mediante hospitalización son los siguientes:

a) situaciones de inminente peligro donde la persona pueda hacerse daño a sí mismo, a otros o a la propiedad;

b) que la persona demuestre incapacidad para tomar decisiones o para controlar su conducta;

c) se requiere prueba de conducta específica en un período de tiempo inmediatamente precedente a la presentación de la petición;

d) se requiere evidencia de ausencia de alternativas menos intensivas con iguales oportunidades de corregir o mejorar los síntomas y signos de la persona; y

La internación indefinida en una institución adecuada del Estado, a tenor con la Regla 240 de Procedimiento Criminal, supra, podría resultar excesiva e injustificada.  Consideremos, por ejemplo, la circunstancia en que un imputado encontrado judicialmente improcesable está originalmente ingresado por indicación médica, como imperativo necesario para su posterior evaluación por el tribunal sobre si habrá de estar procesable, y durante el tratamiento adviene la necesidad dentro del propósito perseguido, de que continúe el tratamiento en forma ambulatoria.  En ese contexto particular, el imputado improcesable podría confrontar dificultades terapéuticas, pues su internación podría ser contraindicada en relación con el tratamiento necesario para que advenga a estar procesable.[61]  Ciertamente, el ingreso indefinido de un acusado improcesable generalmente resulta justificado cuando la persona recluida cumple con los estándares para ser internado involuntariamente mediante el procedimiento de internación civil contemplado por ley, en protección de sí mismo, de otras personas o de la propiedad.

Concluimos que un imputado sujeto a una internación indefinida, a base de una determinación judicial de improcesabilidad, por un término irrazonable, no recibe trato igual en relación con el resto de la ciudadanía, cuando está recluido en una institución hospitalaria sin que se hubiera determinado que están presentes las circunstancias fácticas antes indicadas que darían lugar a que fuera hospitalizado, según el referido procedimiento

---

e) se demuestre que el tratamiento o medida que se solicita resultara [sic] clínicamente beneficiosa.

[61] Sobre este particular, se ha expresado lo siguiente:

Aside from ensuring treatment, **commitment seems justified when an incompetent defendant satisfies the standards for civil commitment... If an incompetent defendant is neither civilly committable nor likely to respond to institutional treatment within a reasonable time, he ought to be released from custody until he is able to stand trial.  The confinement of such a person serves no legitimate interest of the state.**  Furthermore, if the defendant's condition is curable by treatment not available in the state institution, commitment may in fact prevent his recovery.  (Énfasis suplido y notas al calce omitidas.)  Véase, Note, Incompetency to Stan Trial, 81 Harv. L. Rev. 454 (1967).

de internación civil dispuesto por la Ley de Salud Mental de Puerto Rico, supra.

V

Por los fundamentos antes expuestos, procede confirmar el dictamen emitido por el Tribunal de Circuito de Apelaciones que confirmó, a su vez, la resolución dictada por el Tribunal de Primera Instancia denegando el recurso de hábeas corpus.  Procede, además, devolver este caso al Tribunal de Primera Instancia para que celebre una vista, a los efectos de determinar si el peticionario está o no permanentemente improcesable o si advendrá capaz dentro de un término razonable para enfrentar el procedimiento criminal.

Se dictará sentencia de conformidad.

EFRAÍN E. RIVERA PÉREZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Ruiz Ramos

    Peticionario

        v.

                        CC-1999-737    Certiorari

Alcaide Penitenciaría
Estatal de Río Piedras

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 30 de octubre de 2001.

        **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmando el dictamen emitido por el Tribunal de Circuito de Apelaciones que confirmó, a su vez, la resolución dictada por el Tribunal de Primera Instancia denegando el recurso de hábeas corpus.  Se devuelve el caso al Tribunal de Primera Instancia para que celebre una vista, a los efectos de determinar si el peticionario está o no permanentemente improcesable o si advendrá capaz dentro de un término razonable para enfrentar el procedimiento criminal.**

        **Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Rebollo López y Hernández Denton disienten con opinión escrita.  El Juez Asociado señor Fuster Berlingeri está inhibido.**

**Isabel Llompart Zeno
Secretaria del Tribunal Supremo**

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Ramón Ruiz Ramos

    **Peticionario**

      v.                                   CC-1999-737        CERTIORARI

Alcaide Penitenciaría
**Estatal de Río Piedras**

Recurrido

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

**San Juan, Puerto Rico, a 30 de octubre de 2001**

En el día de hoy, una mayoría de este Tribunal decide que a un imputado de delito que se encuentra sumariado --y que por razón de incapacidad mental, para ser procesado criminalmente, ha sido ingresado en una institución psiquiátrica-- no le asiste la protección constitucional contra la detención preventiva en exceso de seis meses toda vez que, conforme la Mayoría, éste no se encuentra en "espera de juicio" en esas circunstancias. Al así resolver, la Mayoría se aparta de la realidad en función de la cual fue concebido el referido precepto. Es por ello que disentimos.

I

Contra el aquí peticionario, Ramón Ruiz Ramos, el Estado radicó sendas denuncias: la primera, por infracción al Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, también conocida como la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. secs. 601 *et seq.*; y, la segunda, por una infracción al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2404.

Ruiz Ramos no pudo prestar la fianza, en cuanto al cargo por violación a la Ley de Sustancias Controladas, razón por la cual fue ingresado en una institución penal el día 5 de noviembre de 1998. Pendiente la celebración de la vista preliminar, en cuanto a este cargo, la defensa del imputado presentó una moción al amparo de las disposiciones de la Regla 240 de Procedimiento Criminal, 34 D.P.R.A. Ap. 11, R. 240.

Celebrada la correspondiente vista, sobre la capacidad de Ruiz Ramos para ser procesado, el 15 de marzo de 1999, el juez de instancia determinó, como cuestión de hecho y derecho, que el peticionario no reunía los requisitos médico-legales para ser procesado criminalmente, razón por la cual ordenó su ingreso inmediato al Hospital de Psiquiatría Forense, institución en la cual sería sometido a evaluación y tratamiento. Poco más de dos meses más tarde, el 7 de junio de 1999, se celebró una vista de seguimiento. En la misma se determinó que éste todavía no estaba en condiciones para ser sometido al proceso judicial correspondiente.

Dado el transcurso de más de seis meses, desde la fecha del ingreso en prisión de Ruiz Ramos, el 11 de mayo de 1999 la representación legal de éste radicó un recurso de hábeas corpus. Adujo, en síntesis, que la detención de su representado violaba sus derechos pues la misma excedía el término máximo de seis (6) meses durante el cual, conforme el mandato de nuestra Constitución, un imputado podía estar sumariado. El tribunal de instancia denegó la solicitud interpuesta al decidir que, si bien la libertad del peticionario estaba restringida, éste no se encontraba en una institución correccional y el propósito de su internación, lejos de

punirlo y mantenerle sumariado, era brindarle terapia y garantizarle que no sería privado de su libertad mediante un proceso criminal cuya naturaleza él no podía comprender.

Inconforme, Ruiz Ramos interpuso recurso de certiorari ante el Tribunal de Circuito de Apelaciones. El foro apelativo intermedio emitió dictamen confirmatorio de la decisión recurrida; razonó que, distinto al propósito que entraña la detención preventiva, la finalidad de la internación de Ruiz Ramos no era garantizar su comparecencia a cualquier procedimiento posterior sino *proveerle tratamiento hasta que éste adviniera capaz de ser procesado.* No conforme con esta determinación, Ruiz Ramos recurrió ante este Tribunal, imputándole al tribunal apelativo intermedio haber errado:

> "…al confirmar la resolución del Honorable Tribunal de Primera Instancia que denegó la petición de excarcelación solicitada por el peticionario de autos toda vez que el Sr. Ruiz Ramos permanece privado de libertad ilegalmente de acuerdo a la Constitución del Estado Libre Asociado de Puerto Rico."

II

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece ––en su Artículo II, Sección 11–– que la "…detención preventiva antes del juicio no excederá de seis (6) meses." (Enfasis suplido.)[62] Esta salvaguarda o protección ––la cual no tiene equivalente en la Constitución de los Estados Unidos[63]–– ha sido descrita "como una garantía al ciudadano contra posibles excesos de autoridad evitando que la restricción efectiva de libertad –cuando ha mediado causa probable para un arresto– se convierta en castigo anticipado por un delito no juzgado."[64]

---

[62] El término *detención preventiva* se refiere al período durante el cual el acusado se encuentra, por no haber podido prestar la fianza impuesta, sumariado en espera de que se le celebre el correspondiente proceso criminal. Pueblo v. Figueroa Garriga, 140 D.P.R. 225 (1996).

[63] Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. II, Sec. 17.2, pág. 461.

[64] Olga E. Resumil, Derecho Procesal Penal, San Juan, Ed. Equity, 1990, T. I, Sec. 6.23, página 149.

Se ha dicho, además, que este derecho, al igual que otros correlativos, tiene el propósito de salvaguardar el superior derecho de la presunción de inocencia; que, por la naturaleza de los principios fundamentales que le subyacen, el derecho a no permanecer en detención preventiva en exceso de seis (6) meses, si bien no puede ser burlado con estrategias forenses malintencionadas, tampoco puede ser objeto de renuncia. De ahí que ni siquiera las posposiciones de juicio a que tenga derecho el imputado, de ser ejercitadas, pueden provocar --en dicho término máximo-- extensión alguna.[65]

A nuestro modo de ver las cosas, este periodo es uno de caducidad. Esto es, una vez comienza a discurrir el mismo, desde la fecha misma en que el imputado es ingresado en prisión por no haber podido satisfacer la fianza, el mismo transcurre sin interrupción. Ciertamente, para que el referido período transcurra ininterrumpidamente, es necesario que concurran dos requisitos, a saber: que el imputado se encuentre bajo el control efectivo del Estado *y* que éste esté "en espera de juicio".

Así, una vez han transcurrido los seis meses de confinamiento en espera de la celebración del juicio, cualquier tiempo en exceso de éstos raya en un confinamiento ilegal y esa ilegalidad puede plantearse en un procedimiento de *hábeas corpus.* Claro está, el hecho de que la detención en exceso de ese período sea en sí ilegal, no significa que el proceso no pueda continuar; es decir, no por ello el acusado queda exonerado del delito. Véase: Pueblo v. Monge Sánchez, 122 D.P.R. 590 (1988); Pueblo v. Eladio Ortiz, 76 D.P.R. 247 (1954).

Dicho de otra forma, la excarcelación en esta clase de situación tiene, como única consecuencia, la celebración del juicio estando el imputado en el disfrute de su libertad. De esta manera se logra un balance adecuado entre el poder de custodia del Estado sobre el imputado -*cuyo propósito es hacer efectivo su interés de tenerle disponible para llevarle*

---

[65] **Véase: Opinión concurrente del Juez Asociado señor Negrón Fernández, en Sánchez v. González, 78 D.P.R. 849, 850 (1955) (Sentencia).**

*al tribunal–* y el derecho de éste a disfrutar de su libertad en función de la presunción de inocencia que le asiste.

III

No hay duda de que a través de las disposiciones de la Regla 240 de las de Procedimiento Criminal se <u>instrumenta</u> el principio de que aquél que está mentalmente incapacitado no pueda ser juzgado, convicto y sentenciado; el debido procedimiento de ley así lo impide. En otras palabras, en virtud del mecanismo establecido en esta disposición reglamentaria se logra que aquella persona cuya capacidad mental le impide comprender la naturaleza del proceso radicado en su contra y, como consecuencia, no puede colaborar con su defensa, no sea sometida a juicio.

Estamos <u>contestes</u> con la Mayoría en que una determinación de no procesabilidad hace mandatoria la posposición de la cadena acusatoria iniciada contra el imputado. <u>Diferimos</u>, sin embargo, de la conclusión de la Mayoría a los efectos de que, una vez se da dicha determinación, el imputado no se encuentra en "espera de juicio".

Somos del criterio que, no obstante la determinación de no procesabilidad, el imputado efectivamente continúa en "espera de juicio". Ello así ya que, el efecto de una determinación de esa naturaleza, <u>no</u> supone un archivo o sobreseimiento de los cargos radicados; <u>meramente se trata de una suspensión temporal de los procedimientos</u>.

Dentro de estas circunstancias, la afirmación mayoritaria de que el peticionario no se encuentra sumariado en espera de juicio y que sólo está recluido recibiendo tratamiento, por lo que no puede ser enjuiciado, es sólo un eufemismo.[66] <u>Si bien la involuntaria reclusión del peticionario en la institución psiquiátrica obedece a que éste fue hallado incapaz de ser procesado, dicha determinación se dio en virtud de la iniciación, y</u>

---

[66] **Refrenda –así– la Mayoría el razonamiento del Procurador General, quien, para describir el concepto *reclusión en institución adecuada* (concebido en la Regla 240), con aires de prosa poética, afirma que: ésta "va dirigida primordialmente a proveer un remedio terapéutico que viabilice la pronta**

dentro, de un procedimiento criminal en su contra y la misma no supone, repetimos, ni que el Estado ha perdido jurisdicción sobre el imputado ni, mucho menos, que ya no habrá de celebrarse el juicio; sólo significa, repetimos,  que dadas las circunstancias dicho proceso tiene que ser suspendido temporalmente.

De lo anterior, se desprende claramente que contra una persona que ha sido sometida al procedimiento concebido en la Regla 240, supra, y que ha sido hallada no procesable, pende todo un procedimiento criminal cuya activación está supeditada a la condición de que el imputado advenga mentalmente capaz. En esencia, no se trata de otra cosa que no sea una misma secuencia acusatoria caracterizada por un elemento adicional: la determinación de la capacidad del imputado para ser enjuiciado.[67]

La interpretación de la Mayoría, de las disposiciones de la Sección 11 del Artículo II de nuestra Constitución y de la Regla 240 de Procedimiento Criminal, permite que se le dé un trato injusto y desigual al imputado sumariado, como el aquí peticionario Ruiz Ramos, que adviene mentalmente incapaz; trato distinto al que recibe el imputado sumariado que nunca se incapacita mentalmente.

Estos últimos, gracias a su lucidez mental, evitan la inflicción de un castigo mayor, esto es, el estar sumariados en exceso de seis (6) meses. Los primeros, sin embargo, quedarán sujetos al poder de custodia del Estado, prácticamente de manera irrestricta; únicamente debido a una condición mental sobre la cual ellos no tienen control alguno.

En atención a ello, no podemos concederle poder irrestricto al Estado para privar de su libertad a un imputado de delito por tiempo ilimitado y en exceso del término constitucional de seis (6) meses, exclusivamente

---

recuperación de una persona que no está apta mentalmente para enfrentar los rigores de un juicio criminal." Ver página 5 de su alegato ante este Tribunal.
[67] La expresada posición se fortalece cuando consideramos que uno de los propósitos principales del Estado --sino el principal-- al brindarle tratamiento al imputado que se incapacita pendiente la celebración del juicio lo es, precisamente, lograr que éste recobre su sanidad mental para poderlo procesar criminalmente.

so color de que el Estado le está brindando a éste tratamiento para su condición mental.[68]

El remedio que para esta situación provee la Mayoría es, dicho con el mayor respeto, peor que la enfermedad. El mismo nos conduce a una situación inaceptable e insostenible, a saber: la determinación de que el imputado no está procesable conlleva, no solo la suspensión de los procedimientos judiciales en su contra, sino que entraña la pérdida de derechos que expresamente le garantiza a éste nuestra Constitución.

Tal parece que la Mayoría entiende que, mantener privado de su libertad a un imputado por tiempo indefinido, es "menos malo" que someterlo a un proceso que él no comprende. En otras palabras, la observancia del debido proceso de ley --al no someter a un incapaz a proceso judicial-- nos conduce a la privación de libertad por tiempo indefinido y a la negación de derechos constitucionales. No podemos suscribir esta posición.


IV

Determinado que la prohibición constitucional, plasmada en la Sección 11 del Artículo II de nuestra Constitución, aplica a una situación en que el imputado se encuentra internado en una institución psiquiátrica recibiendo tratamiento, en espera de que se recupere para ser sometido a juicio, nos resta por delinear el curso de acción a seguir una vez éste adviene acreedor de su liberación, esto es, una vez transcurren los seis (6) meses de detención preventiva.

Somos del criterio que, en ese momento, procede que el tribunal, dentro del mismo procedimiento de *hábeas corpus* y una vez ha decretado la excarcelación, determine si el imputado representa, o no, un peligro para sí o para la sociedad. De esa decisión dependerá si éste es puesto en libertad, en la situación de que no representa peligro, o si, por el contrario, se ordena su internación a la luz de las disposiciones de la Ley de Salud Mental de Puerto Rico, Ley Núm. 408 del 2 de octubre de 2000.

---

[68] **Ello en vista del hecho que el principal -sino el único- interés del Estado en darle tratamiento lo es el tenerle disponible para ser enjuiciado cuando**

A nuestro juicio, no hay razón legal válida alguna que impida que --dentro, o como parte, del procedimiento de *hábeas corpus*-- el tribunal haga una determinación de esta naturaleza al amparo de las disposiciones de la citada Ley de Salud Mental. En primer lugar, el recurso de *hábeas corpus* es uno extraordinario de naturaleza civil, al cual, naturalmente, le son aplicables parcialmente las Reglas de Procedimiento Civil. Véase: Ramos Rosa v. Maldonado Vázquez, 123 D.P.R. 885 (1989).

Conforme establece la Regla 1 de Procedimiento Civil, dichas disposiciones reglamentarias deberán ser interpretadas "...de modo que garanticen una solución justa, rápida y económica de todo procedimiento." No hay razón alguna, en consecuencia, para requerir que el Estado, o cualquier otra persona, tenga que radicar una acción separada, bajo las disposiciones de la Ley de Salud Mental, con el propósito de que se decida si el imputado representa, o no, un peligro para la sociedad o para sí mismo.

En segundo término, ya apercibidos los abogados del imputado y los representantes del ministerio público, no resulta oneroso requerirle a éstos que vengan debidamente preparados para presentar evidencia, y argumentar, sobre la condición, o no, de peligrosidad del imputado en la vista de hábeas corpus.

Procede que se enfatice que el Artículo 2.03 de la Ley de Salud Mental establece criterios clínicos específicos que deberá considerar el tribunal para ordenar que una persona reciba tratamiento psiquiátrico compulsorio, bien de manera ambulatoria o por medio de una hospitalización.[69]

Resulta importante señalar que, contrario a la generalidad de la que adolece la antes citada Regla 240 de Procedimiento Criminal, los criterios de la Ley de Salud Mental delimitan la discreción del tribunal en la tarea

---

recobre su capacidad mental.

[69] **Los criterios son, en síntesis: la amenaza de peligro por daño autoinfligido, daño a otros o a la propiedad; ausencia de autocontrol; prueba de conducta específica en un periodo inmediatamente precedente a la solicitud de internación; demostración de que la internación es la medida**

de ordenar el ingreso involuntario de una persona incompetente a una institución de servicios psiquiátricos. Al pautar los contornos dentro de los cuales el tribunal puede ejercitar su discreción, el mecanismo de internación provisto en la Ley de Salud Mental reduce la posibilidad de lesiones a los derechos de quienes son sometidos al mismo mediante la emisión de decisiones arbitrarias.

Cabe destacar que, según dicha disposición estatutaria, la necesidad del ingreso involuntario debe ser evidenciada mediante prueba clara y convincente que logre satisfacer los criterios antes mencionados. Debe destacarse, además, que las órdenes que a estos efectos el tribunal expida, tienen vigencia limitada. El proceso para la extensión de las mismas está elaborado en el texto de la referida Ley que, incluso, concibe la interposición de una petición de *hábeas corpus* y hasta tipifica como delito menos grave la internación de una persona que no reúne los requisitos para ser institucionalizada.

Entendemos que, bajo este esquema de contrapesos, se reconcilia o armoniza --de la manera más razonable y justa-- el interés del Estado de procesar a quienes les imputa la comisión de conducta criminosa, y que advienen incapaces, con el fundamental derecho del imputado a ser presumido inocente y con todo otro derecho que le garantiza la Constitución a nuestros conciudadanos.

V

A la luz de todo lo antes expuesto, resulta mandatoria la conclusión de que procede revocar la sentencia emitida en el presente caso por el Tribunal de Circuito de Apelaciones. Es innegable que el peticionario Ruiz Ramos ha estado, de manera ininterrumpida y en exceso del término de seis (6) meses, bajo el control efectivo del Estado y en "espera de juicio". Esto es, se cumplen plenamente con los dos requisitos que exige, para su

---

**terapéutica menos onerosa o lesiva para el incompetente; y prueba de que la medida resultará en beneficio clínico para éste.**

aplicación, la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico.

Ya es hora que esta persona --el cual ha rendido una pena anticipada, en exceso de dos años, sin que haya mediado convicción alguna, so pretexto de su recuperación mental-- reciba los beneficios de los derechos que le garantiza la Constitución a todo ciudadano. Es por ello que al revocar la sentencia recurrida, devolveríamos el caso al tribunal de instancia para que proceda a recibir la prueba que tengan a bien presentar las partes respecto a si Ramón Ruiz Ramos constituye, o no, un peligro para la sociedad o para sí mismo y determine el curso a seguir a la luz de los criterios, y mandatos, de la Ley de Salud Mental de Puerto Rico. Facultaríamos, además, al tribunal de instancia para que requiera prueba pericial respecto a si la condición mental del imputado es, o no, revisable; ello con el propósito de determinar, en caso de no serlo, si procede decretar el archivo formal de los cargos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ramón Ruiz Ramos

    Peticionario

      vs.                  CC-1999-737    Certiorari

Alcaide Penitenciaría Estatal
de Río Piedras

    Recurrido


Opinión Disidente emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 30 de octubre de 2001.

En esta ocasión una mayoría de este Tribunal resuelve que el plazo máximo de seis (6) meses de detención preventiva que establece la Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico sólo es de aplicación a acusados que no pueden prestar fianza. Entendemos que esta disposición constitucional está basada en el principio fundamental de la presunción de inocencia y, como tal, es mucho más abarcadora. Disentimos.

I

El peticionario, Ramón Ruiz Ramos, fue acusado de maltrato bajo la Ley Núm. 54 del 15 de agosto de 1989, 8 L.P.R.A. secs. 601 *et seq.* El Tribunal de

Primera Instancia encontró causa probable en su contra en vista preliminar, y fijó fianza de $10,000.00. Luego, se le imputó además por infracción al Artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404. El 5 de noviembre de 1998 el Tribunal de Primera Instancia determinó causa probable para el arresto y se fijó una segunda fianza de $10,000.00. Por no poder prestar dichas fianzas, Ruiz Ramos fue encarcelado ese mismo día.

Antes de celebrarse vista preliminar en cuanto a la segunda imputación, su representación legal presentó moción solicitando una evaluación sobre su condición mental. En vista celebrada al respecto el 15 de marzo de 1999, se determinó que Ruiz Ramos no reunía los criterios médicos legales de procesabilidad. El Tribunal de Primera Instancia ordenó, pues, su traslado inmediato al Hospital de Psiquiatría Forense para que fuera evaluado y recibiera tratamiento.

El 11 de mayo de 1999, pasados ya seis meses de su detención, su representación legal presentó recurso de hábeas corpus argumentando que él se encontraba recluido en violación del término máximo de seis meses de detención preventiva establecido por la Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico. El Tribunal de Primera Instancia denegó el recurso por entender que, aunque Ruiz Ramos estaba privado de su libertad, éste no se encontraba en una institución correccional, y que la privación de su libertad no respondía a su inhabilidad para prestar la fianza fijada en el caso. Además, decidió que dicha privación no contraviene la presunción de inocencia, ya que su ingreso en el referido hospital no guarda relación con su condición de sumariado.

Inconforme, Ruiz Ramos acudió ante el Tribunal de Circuito de Apelaciones. Dicho foro confirmó la determinación del Tribunal de Primera Instancia. Concluyó que el propósito de la detención preventiva es garantizar la comparecencia del acusado a cualquier procedimiento posterior al arresto, mientras que el ingreso en el Hospital de Psiquiatría Forense sólo pretende proveerle tratamiento al imputado hasta que se encuentre procesable, por lo que la referida cláusula constitucional no es aplicable en este caso. Inconforme aún, Ruiz Ramos acude ante nos.

II

La Regla 240 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 240, establece un procedimiento mediante el cual un acusado puede solicitar que se le encuentre mentalmente incapacitado. El debido proceso de ley obliga al Estado a suspender la celebración del juicio de un acusado hallado improcesable bajo dicha Regla. La misma provee para la reclusión del acusado en una institución adecuada. Id. No se establece un periodo máximo de tiempo para dicha internación involuntaria. Id. Por otro lado, la Sección 11 del Artículo II de nuestra Constitución establece un término máximo de seis (6) meses para la detención preventiva antes del juicio. Surge, pues, la interrogante de si un acusado hallado improcesable e internado involuntariamente bajo la Regla 240 puede estar recluido en exceso de dicho periodo máximo de seis meses dispuesto por nuestra Constitución.

III

*"My guiding principle is this: Guilt is never to be doubted."*
Franz Kafka, "In the Penal Colony".

La presunción de inocencia nos ha permitido escapar de la paranoia, claustrofobia, crueldad y morbosidad que tan crudamente encarnan las realidades en las que se desplazan los personajes de Franz Kafka. Nuestro pasado está repleto de memorias de sistemas penales que brindaban garantías míseras a los acusados de crímenes. Así pues, los antiguos anglosajones sometían a los acusados a ordalías por fuego y por agua en las cuales se presumía la culpabilidad del acusado. Sólo la intervención divina que salvara al acusado de la muerte o del daño corporal podía probar la inocencia del desdichado.

Estos métodos han quedado en desuso por el consenso general en cuanto a su carácter injusto. En nuestra jurisdicción, pues, hemos decidido reemplazar el mandato del oficial de la colonia penal de Kafka y dejar firmemente plantado como principio rector uno que entendemos es más sabio: la inocencia siempre se presume.

Y para que no quedase duda alguna, la Convención Constituyente decidió dejar plasmado tan importante principio en la Carta de Derechos de nuestra

Constitución: "En todos los procesos criminales, el acusado disfrutará del derecho... a gozar de la presunción de inocencia." Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 11. La presunción de inocencia es piedra angular de nuestro ordenamiento jurídico. Garantiza la preeminencia del derecho individual a la libertad sobre el poder acusatorio del Estado. Dicho precepto constitucional no se limita a ser sólo una regla de derecho probatorio, sino que es más bien una ideología que debe empapar todo nuestro sistema de justicia criminal. De la presunción de inocencia surgen muchas de las demás garantías que le brinda nuestra Constitución a un acusado. Sobre este particular expresó el Juez Asociado señor Negrón Fernández:

> El derecho a la libertad provisional bajo fianza, el derecho a que éstas no sean excesivas, y el derecho a salir en libertad transcurridos seis meses de encarcelación por defecto de fianza en espera de juicio, son derechos correlativos, dirigidos todos a salvaguardar el superior derecho –constante también como garantía constitucional– de la presunción de inocencia. Las disposiciones sobre libertad provisional bajo fianza, y sobre fianzas excesivas, **no surgen como un acto de gracia del Estado: su existencia es coextensiva con la necesidad de efectivar el fundamental derecho a la presunción de inocencia**, sin que sufra menoscabo la protección que a la sociedad debe, en un válido y razonable ejercicio de poder público, el Estado. Sánchez v. González, 78 D.P.R. 849, 856 (1955) (Sentencia) (Opinión del Juez Asociado señor Negrón Fernández, con la cual concurrieron el Juez Presidente señor Snyder y el Juez Asociado señor Sifre) (*énfasis suplido*).

Así pues, nuestra Constitución garantiza el derecho de un acusado a quedar en libertad bajo fianza antes de mediar un fallo condenatorio. Id. Esta disposición surge de la necesidad de limitar el poder del Estado de encarcelar a un acusado antes que el mismo sea enjuiciado. Antes del juicio, todo acusado es inocente. Por lo tanto, el acusado debe tener la oportunidad de garantizar su comparecencia al juicio de un modo que no coarte su libertad.

De igual manera, la Convención Constituyente entendió que un acusado presuntamente inocente no puede ser encarcelado antes del juicio por un periodo irrazonable de tiempo. Un inocente no puede ser privado de su libertad sin mediar una razón de gran peso. No podemos olvidar que: "In our society liberty is the norm, and detention prior to trial or without trial

is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Véase además, Foucha v. Louisiana, 504 U.S. 71 (1992).

La encarcelación de un acusado antes del juicio está autorizada por el interés legítimo y apremiante del Estado de asegurar la comparecencia de todo acusado al proceso. Pueblo v. Negrón Vázquez, 109 D.P.R. 265, 266-67 (1979). Sin embargo, esta facultad del Estado está estrictamente limitada por la presunción de inocencia y el debido proceso de ley. A estos efectos, el Tribunal Supremo de los Estados Unidos reiteró recientemente que: "'[the] maximum length of pretrial detention is limited' by 'stringent' requirements". Zadvydas v. Davis, 533 U.S.__ (2001), citando Carlson v. Landon, 342 U.S. 524, 545-546 (1952). Estas exigencias surgen de la firme creencia en que: "No society is free where government makes one person's liberty depend upon the arbitrary will of another." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 217 (1953) (Opinión Disidente del Juez Asociado señor Black).

En reconocimiento de estos principios, la Sección 11 de la Carta de Derechos dispone que "[l]a detención preventiva antes del juicio no excederá de seis meses." Const., supra, Art. II, Sec. 11.

La Opinión del Tribunal resuelve que esta limitación constitucional sólo aplica a los acusados encarcelados por no haber podido prestar fianza. Reconocemos que los únicos casos que se han litigado ante este Tribunal sobre dicha cláusula constitucional envolvían acusados que no habían podido prestar fianza. Sin duda alguna, la mayoría de los casos en los cuales surge esta situación (la detención preventiva por más de seis meses) están relacionados a la fianza. Sin embargo, esto no quiere decir que estos sean los únicos ciudadanos a los cuales le aplica esta protección constitucional. Esto sólo significa que el caso de autos plantea una cuestión novel y poco usual.

Como expusiéramos anteriormente, la limitación constitucional al periodo de detención preventiva nace de la presunción de inocencia. **Todo** acusado se presume inocente; no solamente los que no pueden prestar fianza. Por lo tanto, esta limitación constitucional al periodo de detención

preventiva es de aplicación a **todo** acusado. El texto constitucional no establece ninguna distinción ni sugiere que el plazo máximo sea de aplicación sólo a los que no pueden prestar fianza. Id. De igual manera, las discusiones de la Convención Constituyente no indican que dicho plazo sea de aplicación limitada.

El señor delegado Arcilio Alvarado describió el plazo de la siguiente manera durante los debates de la Convención: "Este término que estamos fijando es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un hábeas corpus inmediatamente que hayan pasado los seis meses." 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1595 (1962).

Por su parte, el señor delegado Héctor González Blanes explicó que "[l]o que se quiere evitar con esta disposición es que un individuo esté preventivamente detenido por tiempo ilimitado, como acontece muchas veces en los tribunales." Id. en la pág. 1596. Lo que preocupaba a los miembros de la Asamblea Constituyente era que una persona presuntamente inocente estuviera **bajo custodia del Estado** por más de seis meses sin el debido proceso de ley correspondiente. No se hace, pues, referencia en ningún momento a que el plazo **sólo** aplique a aquellos que no pueden prestar fianza.

Nuestras decisiones han reconocido que la Convención Constituyente "[c]onsideró preferible rendir la custodia de un acusado después de ese periodo [de seis meses], antes que hacer vulnerable la integridad de su derecho a la **presunción de inocencia** –que también consagraba en la propia Constitución– si dejaba ilimitado el ejercicio de[l] poder de custodia [del Estado] por la mera utilidad de que el Estado le tuviera disponible para llevarle al tribunal." Sánchez, supra, en la pág. 856–57 (*énfasis suplido*). Por estar en juego la presunción de inocencia aplicable a **todas las personas**, dicho límite a la detención preventiva debe aplicarse a **todos los acusados.**

Por otro lado, en su obra sobre recursos extraordinarios, el Profesor David Rivé Rivera ha comentado que **"irrespectivamente de la causa por la cual no se haya podido celebrar el juicio** el acusado se hace acreedor a su excarcelación al transcurrir 6 meses desde su detención preventiva." David

Rivé Rivera, Recursos Extraordinarios 147 (1996) (énfasis suplido). El plazo

máximo es de aplicación aun cuando el acusado mismo ha causado la posposición

del juicio al solicitar prórrogas meritorias y de buena fe.  Sánchez, supra.

La propia Opinión mayoritaria correctamente señala que:

> "El referido precepto constitucional sobre la limitación de la detención preventiva constituye una restricción **al poder de custodia del Estado**.  La referida protección constitucional instituye una garantía procesal contra posibles excesos de autoridad por parte del Estado, evitando que la restricción efectiva de la libertad, una vez determinada causa probable para arresto, resulte en un castigo anticipado por un delito que no se ha juzgado."  Opinión mayoritaria, en la pág. 13 (*énfasis suplido*).

Como tal, entendemos que la limitación es relevante siempre que un acusado

está **bajo la custodia del Estado** por el mero hecho de ser acusado.[70]

IV

Por otro lado, a modo ilustrativo, examinaremos el derecho

estadounidense relativo al asunto medular del caso de autos. Como

correctamente expone la Opinión mayoritaria, el Tribunal Supremo de los

Estados Unidos, en Jackson v. Indiana, 406 U.S. 715 (1972), resolvió que

el Estado no puede internar involuntariamente a un acusado improcesable por

un periodo irrazonable de tiempo. La razonabilidad de dicho periodo depende

de la probabilidad sustancial de que el imputado advenga mentalmente capaz

---

[70] La controversia medular de este caso fue atendida por este Tribunal en Pueblo v. Santana Claudio, Sentencia del Tribunal del 1 de septiembre de 1994, CE-94-582.  En esa ocasión expresamos:

> El hecho que el Estado no haya podido iniciar el procesamiento criminal de la imputada, por razón de su estado no-procesable, no justifica su permanencia bajo detención preventiva en exceso de los seis (6) meses que dispone la Sección 11 del Artículo II de la Constitución.  Resolver lo contrario nos llevaría a la paradójica e injusta situación de mantener en un limbo jurídico a la imputada quien se supone que goza de la presunción de inocencia pero continuaría encarcelada como si estuviese cumpliendo la pena por el delito imputado *ad-infinitum*.
>
> El interés público queda adecuadamente protegido en la medida en que nada impide al Estado continuar con la vista de procesabilidad señalada...
>
> El Estado cuenta, además, con otros mecanismos legales para que la imputada obtenga el tratamiento siquiátrico necesario y la sociedad cuente con una expectativa razonable de seguridad. Pueblo v. Santana Claudio, Sentencia del Tribunal del 1 de septiembre de 1994, CE-94-582.

para enfrentar los procedimientos criminales. Id. En caso de que la capacidad mental del acusado permanezca en un estado de improcesabilidad, y no exista probabilidad sustancial de que advenga a estar capaz mentalmente, se debe liberar de la institución adecuada del Estado. Id. El Tribunal Supremo de los Estados Unidos en Jackson, supra, no estableció ningún límite para dicho periodo razonable.

Sabido es que las protecciones constitucionales que le extienden los estados a sus ciudadanos pueden ser de una factura más ancha que las garantizadas por la Constitución federal. A estos efectos, algunos de los estados han establecido mecanismos para responder a las exigencias de Jackson, supra.

Dieciocho estados han dispuesto cortos periodos máximos de tratamiento para los acusados improcesables.[71] Véase, Grant H. Morris y J. Reid Meloy, Out Of Mind? Out of Sight: The Uncivil Commitment of Permanently Incompetent Criminal Defendants, 27 U.C. Davis L. Rev. 1, 14 (1993). Estos fluctúan entre un mínimo de sesenta (60) días (en dos estados), hasta un máximo de dieciocho (18) meses (en otros dos estados). Id. El periodo más frecuente es de seis (6) meses (cuatro estados) o un año (cuatro estados). Id. Cabe también mencionar que la legislación federal dispone que un acusado improcesable no puede permanecer bajo custodia federal, sólo por ser improcesable, por más de cuatro (4) meses a menos que el tribunal encuentre que es probable que el acusado advenga procesable dentro de un periodo razonable. U.S. v. Baker, 807 F.2d 1315, 1320 (6th Cir. 1986).

Otros cuatro estados han eliminado completamente los procedimientos para internar a los acusados improcesables.[72] Morris y Meloy, supra, en las

---

[71] Alaska (180 días, más otros 6 meses si el imputado fue acusado de un crimen violento contra otra persona), Arizona (6 meses), Arkansas (1 año), Connecticut (18 meses o la sentencia máxima, lo que sea menor), Georgia (9 meses), Idaho (180 días), Indiana (6 meses), Kansas (6 meses), Kentucky (60 días), Maine (1 año), Michigan (15 meses o 1/3 de la sentencia máxima, lo que sea menor), Missouri (12 meses), Ohio (15 meses o 1/3 de la sentencia máxima, lo que sea menor), South Carolina (60 días), Texas (18 meses), Washington (90 días para acusados con problemas de desarrollo mental, 180 días para todos los demás acusados; la internación se puede extender por otros 6 meses), West Virginia (6 meses, se puede extender por otros 3 meses por pedido del oficial médico), and Wisconsin (12 meses o la sentencia máxima, lo que sea menor). Grant H. Morris y J. Reid Meloy, Out Of Mind? Out of Sight: The Uncivil Commitment of Permanently Incompetent Criminal Defendants, 27 U.C. Davis L. Rev. 1, n. 61 (1993).

[72] New Hampshire, North Carolina, Tennessee, y Vermont. Morris y Meloy, supra, n. 59.

págs. 13-14. Dichos acusados sólo pueden ser internados a través del procedimiento de internación civil. Id. en la pág. 14.

Trece (13) otros estados y el Distrito de Columbia han decidido ignorar el mandato de Jackson, supra, y no han establecido términos máximos para la internación involuntaria de los acusados improcesables. Morris y Meloy, supra, en la pág. 14. Esta negativa ha sido criticada por algunos comentaristas. Id. Los quince (15) estados restantes han instituido periodos que son considerados muy extensos para ser razonables bajo Jackson, supra, según estos mismos académicos. Id. Sin embargo, incluso estos estados imponen algún tipo de límite al periodo de internación. Véanse e.g., People v. Burton, 166 Ill. App. 3d 143, 145 (Ill. App. Ct. 1988) ("If after one year from the date of the original finding of unfitness, the court finds that the defendant continues to be unfit, the State shall request the court to conduct a discharge hearing."); People v. McBrien, 144 Ill. App. 3d 489, 493 (Ill. App. Ct. 1986) (término limitado a la sentencia máxima que se hubiese podido imponer al acusado de ser éste convicto); Lockhart v. Armistead, 351 So. 2d 496, 498 (La. 1977) (término limitado a la sentencia máxima); In re Polk, 84 Cal. Rptr. 2d 389 (Cal. Ct. App. 1999) (término limitado a 3 años o a la sentencia máxima, lo que sea menor). Es importante destacar que el Tribunal Federal de Circuito de Apelaciones para el Primer Circuito ha resuelto que recluir a un acusado, sólo con el propósito de determinar su procesabilidad, por un periodo mayor a la sentencia máxima que podría ser impuesta de éste ser convicto, viola la Constitución Federal. U.S. v. DeBellis, 649 F.2d 1 (1st Cir. 1981).

En un importante estudio sobre procesabilidad, Ronald Roesch y Stephen Golding discutieron doce (12) propuestas para establecer límites al tratamiento de acusados improcesables. Morris y Meloy, supra, en la pág. 15 citando Ronald Roesch y Stephen L. Golding, Competency to Stand Trial 116-20 (1980). La mayoría de las propuestas recomendaban un periodo máximo de seis meses con una posible extensión de otros seis meses si existía una probabilidad sustancial de que el acusado advendría procesable. Id.

Finalmente, debemos mencionar lo resuelto recientemente por el Tribunal Supremo de los Estados Unidos en un caso que, por su similitud al asunto de autos, resulta sumamente persuasivo. En _Zadvydas_, _supra_, dicho Tribunal resolvió que cuando un inmigrante se encuentra legalmente en los Estados Unidos, pero está bajo un procedimiento de remoción, sólo puede mantenerse detenido por un periodo razonable de tiempo. El Tribunal Supremo estableció una presunción de irrazonabilidad para cualquier detención de este tipo por más de seis (6) meses. _Id_. Inclusive, el Tribunal expresó sus dudas sobre la constitucionalidad de un periodo mayor de detención: "We do have reason to believe, however, that Congress previously **doubted the constitutionality of detention for more than six months**. See Juris. Statement of United States in _United States v. Witkovich_, O. T. 1956, No. 295, pp. 8-9. Consequently, for the sake of uniform administration in the federal courts, we recognize that period." _Id_. (_énfasis suplido_). La más reciente jurisprudencia del Tribunal Supremo federal brinda apoyo, pues, a la conclusión de que una detención por más de seis meses es irrazonable.

Entendemos que el límite de seis meses impuesto por nuestra Constitución a la detención preventiva precisamente lo que hace es establecer un máximo al periodo razonable que requiere la Constitución Federal bajo _Jackson_, _supra_. El Diario de Sesiones de la Convención Constituyente ofrece sustento a la razonabilidad de dicho periodo: "El término de seis meses es prudente, es razonable, corresponde a la legislación actual y podría funcionarse con él." 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1595 (1962). Seis meses nos parece un periodo perfectamente razonable para que el Estado tenga como límite al tratar a un acusado improcesable antes de tener que internarlo bajo el procedimiento civil. El derecho estadounidense brinda gran apoyo a esta conclusión.

V

La Opinión del Tribunal distingue entre los acusados que se encuentran encarcelados por defecto de fianza y los que se encuentran internados

involuntariamente por estar improcesables. Resuelve que los acusados improcesables no se encuentran en detención preventiva para efectos del plazo máximo de seis meses. Esta distinción nos parece excesivamente formalista y esencialmente discriminatoria pues excluye de la protección constitucional a los acusados improcesables.

En primer lugar, esta interpretación parece basarse en el hecho que un acusado que no presta fianza se encuentra sumariado porque se encontró causa probable en su contra y está esperando que se le celebre juicio. Como de ordinario está detenido porque el Estado no ha sido diligente, la Constitución dispone un término para la celebración de dicho juicio. Por otro lado, un acusado improcesable está internado recibiendo tratamiento. En estos casos, no se le celebra juicio porque se "pretende evitar la injusticia de requerirle a un acusado que enfrente un proceso criminal, cuando éste no está mentalmente capacitado para ayudar en su defensa; lo cual podría culminar en una convicción errónea. Mediante la referida suspensión [del juicio], se promueve la confianza de la ciudadanía en el sistema judicial criminal, conservando su dignidad e integridad." Opinión mayoritaria en la pág. 10. La Opinión mayoritaria sugiere, pues, que el internamiento involuntario del acusado improcesable es un favor que le está haciendo el Estado a dicho acusado en aras de la integridad del sistema judicial. Respetuosamente, pero de manera enfática, disentimos de esta interpretación.

La única razón por la cual, en un caso como el de autos, el acusado se encuentra internado involuntariamente es porque se encontró causa probable en su contra, pero no se le puede celebrar juicio. La razón por la cual no se le puede celebrar juicio es que el acusado está mentalmente incapacitado y no se puede procesar por consideraciones de debido proceso de ley. Su condición mental está tan fuera de su control como la condición económica del que no puede prestar fianza. No es culpa del acusado el que esté incapacitado mentalmente. Por lo tanto, su situación es idéntica a la del acusado que no presta fianza. Se encontró causa probable en su contra y no se le puede celebrar juicio por razones que están fuera de su control.

La Opinión del Tribunal, en segundo lugar, intenta distinguir el caso del acusado improcesable basándose en que el mismo no está "sumariado en espera de juicio" sino que está en una institución psiquiátrica en espera de su mejoría. Sin embargo, como correctamente menciona dicha Opinión, "[u]no de los efectos de una determinación de improcesabilidad, conforme a lo dispuesto en la Regla 240 de Procedimiento Criminal, supra, es que el acusado permanecerá bajo la jurisdicción del Tribunal." Opinión mayoritaria en la pág. 10. El acusado, pues, está bajo el poder de custodia del Estado. Al respecto, expone el Prof. Rivé Rivera:

> El confinamiento de una persona dentro de unos ciertos límites definidos, por un período considerable de tiempo, sin autoridad legal para ello y sin su consentimiento, constituye encarcelamiento ilegal. Dobbins v. Hato Rey Psychiatric Hospital, 87 D.P.R. 30, 34-35 (1962). Dice este caso que: 'Aunque usualmente se asocie con la detención ilegal en una prisión, no es indispensable que medie una encarcelación propiamente dicho; es suficiente con que ocurra una restricción de la libertad del perjudicado.' Dobbins, supra, pp. 34-35... Dobbins reconoce que la reclusión involuntaria de una persona en una institución para enfermos mentales en violación de las disposiciones estatutarias sobre higiene mental constituye un encarcelamiento ilegal. El hábeas corpus es el recurso preciso para cuestionar la reclusión, o detención, de una persona en un hospital o a manos de personas particulares. David Rivé Rivera, Recursos Extraordinarios 152-53 (1996).

Así pues, ha expresado el Tribunal Supremo de los Estados Unidos que: "The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement." Vitek v. Jones, 445 U.S. 480, 492 (1980). Véase además, Foucha, supra. No hace ningún sentido decir que el imputado improcesable "no se encuentra sumariado en espera de la celebración del juicio". Opinión mayoritaria en la pág. 15. La única razón por la cual el Estado está ejerciendo su poder de custodia sobre el acusado improcesable es porque quiere celebrarle un juicio. Por lo tanto, dicho acusado está recluido en espera de juicio. Esta reclusión está limitada por nuestra Constitución a un plazo máximo de seis meses.

Nos preocupan además las consecuencias inconsistentes que podría tener este pronunciamiento. Por ejemplo, si el imputado se escapara del hospital psiquiátrico en el cual esté internado involuntariamente, este acto se podría considerar una fuga bajo el Artículo 231 del Código Penal, 33 L.P.R.A.

sec. 4428. Ahora bien, si el imputado está "bajo custodia del Estado" para los efectos del delito de fuga, pues también debe estarlo para los propósitos de la cláusula constitucional que establece el límite de seis meses de detención preventiva.

VI

Entendemos, además, que la distinción hecha por la Opinión mayoritaria no está justificada por las buenas intenciones que pueda tener el Estado al internar a un acusado improcesable en contra de su voluntad. El hecho que dicho acusado esté recibiendo tratamiento, y no se le pueda celebrar juicio en aras de proteger sus derechos conforme al debido proceso de ley, no justifica que el Estado pueda privarle de su libertad de forma excesiva. Mediante la suspensión del juicio, el tribunal cumple con su deber de respetar los derechos del acusado. Esta acción no inviste la actuación del Estado al internarlo con un aura benefactora que justifique la privación de su libertad en exceso del plazo constitucional de seis meses. "Of all tyrannies a tyranny sincerely exercised for the good of its victims may be the most oppressive." C.S. Lewis, "The Humanitarian Theory of Punishment".

Es evidente la inconsistencia lógica de la idea que, al internar al acusado involuntariamente por un periodo en exceso de seis meses para "curarlo" y así poderlo procesar conforme con las exigencias del debido proceso de ley, lo que se hace es protegerlo del poder de custodia del Estado. Al acusado improcesable se le está privando de su libertad en exceso del plazo constitucional para que el Estado no le pueda privar de su libertad sin debido proceso de ley. Esto no tiene ningún sentido. La intención bondadosa del Estado al no procesar al acusado mentalmente incapacitado no nos puede cegar ante la inconsistencia de esta posición. "Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent." Olmstead v. United States, 277 U.S. 438, 479 (1928) (Opinión Disidente del Juez Asociado señor Louis D. Brandeis).

También se podría argumentar que el Estado tiene un interés legítimo en internar a un acusado improcesable para brindarle tratamiento. Sin embargo, el Estado no tiene el poder de proveer tratamiento **compulsorio** a

todos los ciudadanos. Esto nos lleva a reflexionar sobre cuál es el interés que verdaderamente se sirve al internar a un acusado improcesable **que no cualifica para un procedimiento de internación civil**. Estamos hablando, pues, de un acusado improcesable que no es peligroso ni para sí mismo ni para los demás. Esta persona sólo estaría bajo la custodia del Estado por concepto de que se encontró causa probable en su contra. El único interés legítimo que tiene el Estado para brindarle tratamiento compulsorio sería lograr que el acusado advenga procesable para así poder enjuiciarlo y castigarlo por su alegada conducta criminal.

Nos preocupa que el efecto de la decisión del Tribunal sea otorgarle un cheque en blanco al Estado para internar y tratar involuntariamente a un acusado con el único propósito de poder castigarlo. Este ímpetu altamente retributivo no nos parece cónsono con la filosofía pro-rehabilitación que establece la Sección 19 del Artículo VI de nuestra Constitución. Incluso la Opinión del Tribunal comenta en el contexto de la internación civil, que "[e]l Estado no tiene un interés en internar involuntariamente a personas que realmente no constituyen un peligro o representen un riesgo inminente de causar daño, por razón de trastorno mental." Opinión mayoritaria en las págs. 18-19. De igual modo se ha expresado el Tribunal Supremo de los Estados Unidos: "[W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." Zadvydas, supra. Véase además, Foucha, supra, (invalidando un sistema de detención basada en incapacidad mental que le imponía al detenido el peso de probar que no era peligroso).Entendemos que el Estado sí tiene un interés generalizado de procesar criminalmente a todos los que infrinjan los estatutos penales, pero nos parece prudente limitar el poder del Estado para fines tan esencialmente retributivos. Es más que razonable proveerle seis meses al Estado para que brinde tratamiento al acusado improcesable cuando el único interés legítimo de dicha custodia involuntaria es el procesarlo penalmente y castigarlo. Insistir en tratar a un imputado improcesable por más de seis meses, e incurrir en el correspondiente gasto de fondos públicos, sólo para poderlo castigar y dejar

caer sobre él toda la fuerza y poder del Estado nos parece excesivamente cruel y vengativo.

## VII

¿Qué ha de suceder, entonces, con los imputados improcesables que sí presentan un peligro para sí mismos o para los demás? Entendemos que existe una genuina y justificada preocupación en este sentido. Dejar libres a personas mentalmente incapacitadas que sean peligrosas y que no puedan ser procesadas penalmente conllevaría un alto riesgo para el público en general y sería un descuido irresponsable del deber del Estado de proteger a la ciudadanía. Sin embargo, nuestra posición no compromete este deber en lo más mínimo.

Como acertadamente menciona la Opinión mayoritaria, nuestra Ley de Salud Mental, Ley Núm. 408 de 2 de octubre de 2000, provee un procedimiento de internación civil. Mediante dicho procedimiento, el Estado puede internar involuntariamente a personas mentalmente incapacitadas que sean peligrosas. Id. La diferencia importante que existe entre este tipo de internación involuntaria y la internación de un acusado improcesable en espera de juicio bajo la Regla 240 es que el procedimiento civil requiere prueba clara y convincente de los requisitos y la necesidad de la internación. Art. 12 de la Ley Núm. 408, supra. La Ley de Salud Mental requiere que se pruebe la peligrosidad de la persona.

Así pues, se requiere un debido proceso de ley más riguroso al privarle a estas personas de su libertad. En el caso de la internación involuntaria bajo la Regla 240 no se requiere que se pruebe nada con respecto a la peligrosidad del acusado. Este estándar diferente al de los demás incapacitados mentales, al aplicarse de manera ilimitada para internar involuntariamente a un acusado por un periodo indefinido de tiempo, nos parece injustificado. "'The basic and unifying thread which runs throughout our recommendations is a rejection of the notion that the mere fact of a criminal charge or conviction is a proper basis upon which to build other unnecessary, unprofitable, and essentially unfair distinctions among the mentally ill.'" Jackson, supra, en la pág. 725 n. 4 citando Association

of the Bar, City of New York, Special Committee on the Study of Commitment Procedures and the Law Relating to Incompetents, Second Report, Mental Illness, Due Process and the Criminal Defendant 1 (1968).

Además, el único debido proceso de ley que se le ha dado al acusado en detención preventiva que justifica su reclusión es el haber encontrado causa probable en su contra. Para los acusados que no prestan fianza, el hallazgo de causa probable sólo justifica su encarcelación por un máximo de seis meses. No vemos razón para que en el caso de los acusados improcesables se justifique una reclusión por más tiempo. Para recluir a los improcesables peligrosos por más tiempo, el Estado debe recurrir al procedimiento de internación civil y probar su peligrosidad.

Nuestra conclusión se sustenta si consideramos lo que se requiere al imponer una medida de seguridad. La Regla 241 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 241, establece el procedimiento para su imposición. Este procedimiento es de aplicación cuando el imputado de un crimen es absuelto por razón de incapacidad mental. Id. Dicha Regla también requiere que se pruebe la peligrosidad del imputado o la efectividad del tratamiento antes de imponer la internación involuntaria de dicho imputado. Id. No vemos por qué se deben requerir menos garantías a la hora de internar a un acusado improcesable.

Cabe mencionar, además, que entendemos que probar la peligrosidad de los imputados improcesables no debe ser una carga onerosa en la grandísima mayoría de los casos. Después de todo, el fiscal está procesando al individuo porque existe evidencia de que cometió un crimen. En los casos en los que el imputado sea verdaderamente peligroso, la evidencia recopilada por el fiscal debe ser más que suficiente para probar la peligrosidad del acusado e internarlo mediante el procedimiento civil. Los únicos casos en los cuales la norma que esboza hoy una Mayoría de este Tribunal verdaderamente hace diferencia es en los casos de acusados improcesables que han cometido crímenes no-violentos y que no son peligrosos. Estas son precisamente las personas que no deben ser internadas involuntariamente.

La Opinión mayoritaria hace posible la privación de la libertad de estas personas sin el debido proceso de ley y sin justificación válida.

VIII

En resumen, entendemos que la limitación de la detención preventiva a un plazo de seis meses nace de la fundamental garantía constitucional de la presunción de inocencia. Como tal, el límite es de aplicación a todos los acusados por igual, y no sólo a aquellos que no han podido prestar fianza.

> The practice of automatic commitment with release conditioned solely upon attainment of competence has been decried on both policy and constitutional grounds... One source of this criticism is undoubtedly the empirical data available which tend to show that many defendants committed before trial are never tried, and that those defendants committed pursuant to ordinary civil proceedings are, on the average, released sooner than defendants automatically committed solely on account of their incapacity to stand trial. Related to these statistics are substantial doubts about whether the rationale for pretrial commitment –that care or treatment will aid the accused in attaining competency– is empirically valid given the state of most of our mental institutions. Jackson, supra en las págs. 734-35 (*citas omitidas*).

Si el Estado quiere internar involuntariamente a un acusado improcesable en exceso de dichos seis meses, debe cumplir con el debido proceso de ley, recurrir al procedimiento de internación civil y establecer con prueba clara y convincente la peligrosidad del acusado. La presunción de inocencia y el debido proceso de ley impiden cualquier otra interpretación. "Executive imprisonment has been considered oppressive and lawless since John, at Runnymede, pledged that no free man should be imprisoned, dispossessed, outlawed, or exiled save by the judgment of his peers or by the law of the land." Shaughnessy, supra, en la pág. 218 (Opinión Disidente del Juez Asociado señor Jackson).

En este caso, el peticionario lleva dos años y medio bajo la custodia del Estado porque se encontró causa probable en su contra y se le internó bajo la Regla 240 de las de Procedimiento Criminal por estar improcesable. Ni tan siquiera surge del expediente que se haya celebrado una vista para determinar si el tratamiento en el hospital psiquiátrico ha surtido algún efecto que pueda indicar que el peticionario advendrá procesable dentro de un tiempo razonable. Entendemos que el recurso de hábeas corpus procede por

haber estado el peticionario bajo la custodia del Estado en espera de juicio en exceso del plazo de seis meses prescrito por nuestra Constitución.

La acción del Estado no está justificada por su alegada intención benéfica. La realidad es que el peticionario ha estado recluido en un hospital psiquiátrico en contra de su voluntad, y en violación de sus fundamentales derechos constitucionales. "Mercy, detached from Justice, grows unmerciful." C.S. Lewis, supra.

De igual manera, el miedo al prospecto de tener lunáticos corriendo por las calles poniéndonos a todos en peligro mortal nos parece infundado y exagerado.

> Concern that the civil commitment process may be inadequate to deal with permanently incompetent criminal defendants appears exaggerated. As discussed above, four states use only the civil commitment process to confine any incompetent defendant. An additional eighteen states use the civil commitment process for permanently incompetent criminal defendants. Although their experience has not been systematically analyzed, the absence of legislative activity to replace the civil commitment approach suggests that it is being used successfully. Morris and Meloy, supra, en las págs. 21–22 (citas omitidas).

Entendemos que el procedimiento de internación civil que dispone nuestra Ley de Salud Mental es el adecuado para este tipo de situación.

Debemos puntualizar que aun si el plazo de seis meses no fuera aplicable al peticionario, entendemos que los dos años y medio que lleva el señor Ruiz Ramos bajo la custodia del Estado es un periodo irrazonable, especialmente dado el hecho que no se ha celebrado ningún tipo de vista consistente con el mandato de Jackson, supra.

No podemos abandonar a los incapacitados mentales y negarles las protecciones constitucionales de las cuales gozan todas las demás personas bajo nuestro ordenamiento jurídico. Por esto extenderíamos el límite de seis meses a una detención preventiva por razón de la improcesabilidad del imputado. Además, siguiendo el precedente establecido en Jackson, supra, e integrándolo con nuestra disposición constitucional, resolveríamos que un imputado improcesable sólo puede internarse por un término razonable **de un máximo de seis meses**. El periodo razonable, claro está, podría en algunos casos ser menor que los seis meses, por imperativo tanto de Jackson, supra,

como de nuestra Constitución. La razonabilidad de dicho término debe depender de la probabilidad sustancial de que el imputado advenga capaz mentalmente para enfrentar los procedimientos criminales. En caso de que la capacidad mental del acusado permanezca en un estado de improcesabilidad, y no exista probabilidad sustancial de que advenga a estar capaz mentalmente, se debe liberar de la institución adecuada del Estado, donde recibe tratamiento, salvo que estén presentes circunstancias fácticas que señalen que debe ser internado involuntariamente bajo un procedimiento de internación civil.

Como la Opinión de este Tribunal adopta una norma que entendemos menosprecia el principio constitucional de la presunción de inocencia, y excluye a los incapacitados mentales de la protección constitucional de juicio rápido, respetuosa, pero enérgicamente, disentimos.


Federico Hernández Denton
Juez Asociado