| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
|---|---|---|
| PUEBLO DE PUERTO RICO<br><br>RECURRIDOS<br><br>V.<br><br>JOSÉ A. SABAT ESQUILÍN<br><br>PETICIONARIO | KLCE202301264 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.:<br>NSCR202200033<br>NSCR202200034<br><br>(703)<br><br>Sobre:<br><br>Art. 109<br>Art. 5.05<br>Ley 404 |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa y la Jueza Alvarez Esnard

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2024.

Comparece en forma *pauperis*, José A. Sabat Esquilín, (en lo sucesivo, "el peticionario"). A través del recurso de epígrafe, solicita nuestra intervención para que dejemos sin efecto la determinación emitida el 23 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Mediante el referido dictamen, el foro a quo, declaró *No Ha Lugar* la moción que había presentado el peticionario, a los fines de que se abonara a su pena carcelaria el término en que estuvo no procesable conforme la Regla 240 de Procedimiento Criminal, 34 LPRA. Ap II, R. 240.

Por los fundamentos que expondremos, *revocamos la determinación recurrida*.

### I.

El peticionario actualmente se encuentra convicto en la Institución Peticionaria de Guerreros-304 del pueblo de Aguadilla. Ello, dado que, el 5 de abril de 2022, el foro primario emitió sentencia condenatoria en su contra. A la luz de lo anterior, se le impusieron dos penas que se

cumplirían consecutivamente. La primera de ellas consistió en una pena de convicción de seis (6) meses y un día bajo el Artículo 5.05 de la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA sec. 458d. En la segunda pena, se impuso una convicción de cuatro (4) años conforme el Artículo 109 del Código Penal de Puerto Rico, 33 LPRA, sec. 5162. En la referida sentencia, el foro recurrido añadió la siguiente expresión: "*abónese lo cumplido en preventiva.*"

Así las cosas, el 11 de mayo de 2023, el peticionario presentó una moción ante el tribunal sentenciador. En lo pertinente, solicitó que se le acreditara a su condena el tiempo que el foro primario lo había declarado no procesable bajo la Regla 240 de Procedimiento Criminal, *supra*. Expresó, que en dicho tiempo fue recluido clínicamente en la Oficina de Calidad de la Administración de Servicios de Salud y Contra la Adicción (en adelante, por sus siglas ASSMCA). En la misma fecha, el foro de origen dictó una "*Orden*" por medio de la cual declaró *No Ha Lugar* la solicitud del peticionario.

Luego de varios trámites procesales que no son necesarios de pormenorizar, el 19 de octubre de 2023, el peticionario nuevamente presentó una moción ante el tribunal sentenciador. En síntesis, reiteró su petición de que se le abonara a su pena carcelaria el tiempo que estuvo recibiendo tratamiento médico bajo la custodia del Estado. Particularmente solicitó, que le fuera abonado la totalidad de un (1) año y seis (6) meses. En respuesta, el 23 de octubre de 2023, el foro de origen emitió la "*Orden*" que nos ocupa. Mediante esta, declaró *No Ha Lugar* lo solicitado, conforme el caso de *Pueblo v. Pagán Medina*, 178 DPR 228 (2010).

Inconforme, el 13 de noviembre de 2023, el peticionario presentó el recurso de epígrafe. Por medio de este, señaló como error que el foro sentenciador no haya abonado al cumplimiento de su pena el tiempo que estuvo no procesable. Específicamente nos solicitó lo siguiente:

> The petitioner pleads the Court of Appeal of San Juan to declare in favor of the petitioner and grant the one (1) year

and six (6) months that would complete the remainder of the petitioner sentence, when applied the time the petitioner was under the custody of the State at AMSCA [Psychiatric] Hospital.

Luego de concederle a la parte recurrida un término para que expresara su posición, el 24 de enero de 2024, compareció mediante "*Escrito en Cumplimiento de Orden*." Mediante este, realizó un trasfondo fáctico de los hechos en cuestión y una exposición del derecho aplicable. Finalmente, se allanó a lo solicitado por el peticionario.

**II**.

**A. Recurso de *Certiorari*:**

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). A pesar de la amplitud de errores que pueden ser revisados mediante el *certiorari* este auto sigue siendo un recurso discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso. *Íd.*, pág. 918. Las resoluciones u órdenes dictadas por los tribunales de primera instancia son revisables ante este Tribunal de Apelaciones, mediante el recurso de *certiorari*. Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y.

La Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de certiorari. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico, supra*. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *Íd.*; *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra,* dispone los siguientes criterios:

> **A.** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**B.** Si la situación de hechos planteada es la más indicada para el análisis del problema.

**C.** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**D.** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**E.** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**F.** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G**. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

**B. Incapacidad Procesal**:

La procesabilidad es uno de los criterios a considerar al momento en que se va a encarar un proceso judicial en contra de un imputado. *Pueblo v. Pagán Medina*, supra a la página 237. El concepto de procesabilidad se define como "la lucidez con la que un imputado de delito puede entender la naturaleza y el procedimiento criminal al que se enfrenta." *Pueblo v. Rivera Montalvo*, 205 DPR 352, 364 (2020); *Pueblo v. Pagán Medina*, supra a la página 237. La no procesabilidad es distinta a la incapacidad mental que existe al momento de ocurrir los hechos del acto criminal. Surge luego de presentada la acusación o denuncia y el imputado va a ser sometido al proceso penal. *Ruiz v. Alcaide*, 155 DPR 492, 499 (2001).

La importancia de evaluar la capacidad mental de un imputado estriba en tener la certeza de que el referido imputado pueda entender el objeto de los procedimientos. *Ruiz v. Alcaide*, supra a la página 499. De manera que contribuya en su defensa. *Íd*. Ello, más allá de solo recordar y relacionar información pertinente a los hechos, toda vez que, debe comprender el papel que desempeña dentro de un proceso judicial. *Pueblo v. Pagán Medina,* supra, a la página 239. Además, de que proseguir un proceso en contra de una persona no procesable violentaría

la cláusula constitucional del debido proceso de ley. *Pueblo v. Rivera Montalvo*, supra a la página 364.

Cónsono con lo anterior, a nivel estatutario se codifica la exigencia de que un imputado sea procesable. Así pues, la Regla 239 de Procedimiento Criminal, 34 LPRA. AP II, R. 239, lee como sigue: "Ninguna persona será juzgada convicta o sentenciada por un delito mientras esté mentalmente incapacitada […]" Por su parte, la Regla 240 de Procedimiento Criminal, *supra* detalla el proceso a seguir en los casos en que esté en cuestión la procesabilidad de un imputado. La precitada regla lee como sigue:

> En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere evidencia, además de la opinión del representante legal del imputado o acusado, que estableciere mediante preponderancia de la prueba que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá los procedimientos y señalará una vista para determinar el estado mental y/o funcional del acusado.
> 34 LPRA, Ap II, R. 240.

De forma inicial, la Regla 240 de Procedimiento Criminal, *supra* le concede al Juzgador la discreción de determinar si existe o no base razonable para creer que el imputado está mentalmente incapacitado. *Pueblo v. Santiago Torres*, 154 DPR 291, 301 (2001). Una vez se establece la referida base razonable, el tribunal tiene que paralizar los procedimientos; ordenar que el imputado sea evaluado; y señalar una vista por medio de la cual se dilucide la procesabilidad de este. *Íd.*

**C. Detención Preventiva**:

Es de rango constitucional que un acusado pueda quedar en libertad bajo fianza antes de mediar un fallo condenatorio. En defecto de la prestación de fianza el imputado será detenido preventivamente. Ante ello, la protección constitucional se extiende a que dicha detención preventiva no exceda de seis (6) meses. Art. II, sec. 11, Const. ELA, LPRA, Tomo 1. Por detención preventiva se concibe al período de tiempo

en que un acusado queda detenido preventivamente mientras espera la celebración del juicio. *Pueblo v. Díaz, Rivera*, 204 DPR 472, 484 (2020). El límite constitucional de seis (6) meses forma parte de las garantías sobre juicio rápido. *Pueblo v. Méndez Pérez*, 193 DPR 781, 788 (2015). De esta manera, se evita la ocurrencia de custodias estatales indefinidas, y se protege la presunción de inocencia. *Íd.* Así pues, la detención preventiva tiene dos (2) propósitos. El primero de ellos, garantiza la comparecencia del imputado o acusado a juicio. El segundo, protege que dicho imputado o acusado sea castigado antes de que medie un fallo en su contra. *Pueblo v. Torres Rodríguez*, 186 DPR 183, 191 (2012). En cuanto al referido término de seis (6) meses, precisa señalar que no opera de forma absoluta. Es decir, existen circunstancias excepcionales que no son contempladas dentro del cómputo de dicho término. Una de las excepciones consiste en el lapso de tiempo en que un imputado se encuentra no procesable. Este es un periodo que no se computa como parte de la obligación del Estado de dar comienzo al juicio, debido a su incapacidad para actuar. *Pueblo v. Méndez Pérez*, supra a la página 789.

Ahora bien, distinto es el caso en el que proceda abonar a un imputado o acusado el tiempo en que estuvo en detención o reclusión por incapacidad procesal. En este escenario, se computará todo el tiempo que el imputado se encontró privado de su libertad, y se abonará a su pena. Ello, dado que, es principio de nuestro ordenamiento jurídico que una persona convicta no permanecerá privada de su libertad mas tiempo del que se disponga en la sentencia. *Pueblo v. Méndez Pérez*, supra a la página 789. A tenor con ello, existen dos (2) disposiciones legales: el Artículo 68 del Código Penal de Puerto Rico, 33 LPRA sec. 5101; y la Regla 182 de Procedimiento Criminal, 34 LPRA Ap. II, R. 182. La primera de ellas lee como sigue:

> A la persona convicta de delito se le abonarán los términos de detención o reclusión que hubiere cumplido, en la forma siguiente:
> (a) El tiempo de reclusión cumplido por cualquier convicto desde su detención y hasta que la sentencia haya quedado

firme, se abonará en su totalidad para el cumplimiento de la pena, cualquiera que sea ésta.
[…]
33 LPRA sec. 5101

A la luz de lo anterior, nuestro más Alto Foro acogió los planteamientos de la profesora Dora Nevares-Muñiz. Particularmente las siguientes expresiones: "[el Art. 68, supra] provee para el abono de la pena de los días en que la persona estuvo recluida previo a que su sentencia fuera firme o **bajo alguna medida de restricción de libertad** o anulada o revocada." (Énfasis suplido). *Pueblo v. Méndez Pérez*, supra, a la página 790, citando a D. Nevares-Muñiz, *Derecho penal puertorriqueño*: *parte general*, 7ma ed. rev.., San Juan, Inst. para el Desarrollo del Derecho, 2015, pág. 383.

Por su parte, la Regla 182 de Procedimiento Criminal, *supra*, lee como sigue:

> El tiempo que hubiere permanecido privada de su libertad cualquier persona acusada de cometer cualquier delito público se descontará totalmente del término que deba cumplir dicha persona de ser sentenciada por los mismos hechos por los cuales hubiere sufrido dicha privación de libertad.
> 34 LPRA Ap. II, R. 182.

Al nuestro mas Alto Foro interpretar tanto la Regla 182 de Procedimiento Criminal, *supra* como el Art. 68 del Código Penal de Puerto Rico, *supra* concluyó lo siguiente: "[para que sea de aplicación la bonificación dispuesta en ambas disposiciones legales] hace falta que [al imputado] se le prive de su libertad, se le acuse y posteriormente se le ingrese para cumplir una sentencia por los mismos hechos que se le detuvo en primera instancia." *Pueblo v. Méndez Pérez*, supra a la página 790, citando a *Pueblo v. Contreras Severino,* 185 DPR 646, 657 (2012).

**III.**

Luego de evaluar de forma detallada el expediente del caso, determinamos expedir el auto y revocar la determinación recurrida. *Veamos.*

En *Pueblo v. Méndez Pérez*, supra el Tribunal Supremo tuvo ante sí un caso similar al que nos ocupa. En el referido caso, se dilucidó una controversia en el que el imputado fue encarcelado por no prestar fianza. Posteriormente, de forma análoga a nuestra controversia, el imputado fue encontrado no procesable. Siendo así, nuestro más Alto Foro tuvo que evaluar si aplicaba abonar a la pena del imputado el término que este estuvo recluido durante la vigencia de su incapacidad procesal. El Tribunal Supremo resolvió en la afirmativa. A la luz de ello, el aludido foro concluyó que el factor decisivo "es el tiempo que una persona haya estado privada de su libertad desde el momento en que inició el procedimiento penal y hasta que se dictó la sentencia condenatoria." *Pueblo v. Méndez Pérez,* supra a la página 791.

De otra parte, en el caso de *Pueblo v. Pagán Medina*, supra se concluyó que la restricción de libertad que surge como consecuencia de la improcesabildad no constituye una detención preventiva. De manera que, la no procesabilidad responde a otras circunstancias de privación de libertad. A la luz de ello, se debe realizar una distinción entres los dos (2) escenarios en que la improcesabilidad coexiste junto a la detención preventiva. Particularmente, es preciso distinguir entre la incapacidad procesal para los efectos de juicio rápido y la incapacidad procesal para los fines de abonar el tiempo de restricción de libertad al cumplimiento de la pena.

Excepcionalmente, la incapacidad procesal de un imputado no forma parte del término de los seis (6) meses que tiene el Estado para comenzar el juicio, en los casos en que el referido imputado se detiene preventivamente. Empero, en el segundo escenario la no procesabilidad se computa de forma conjunta al término de detención preventiva. Es decir, ambos términos constituyen una restricción de libertad y ambos son abonados a la pena que surja de la sentencia dictada. Esto ocurre, a la luz de la Regla 182 de Procedimiento Criminal, *supra* y el Artículo 68 del Código Penal de Puerto Rico, *supra*. Ambas disposiciones legales no

realizan una diferenciación entre una detención preventiva por no prestar fianza y una reclusión para recibir tratamiento médico por no procesabilidad. En cambio, esbozan una normativa que permite que se abone a la pena todo el tiempo en que un imputado se haya privado de su libertad. Ello, sin distinción de la causa que de paso a dicha restricción.

En la controversia ante nuestra consideración, el imputado fue declarado no procesable luego de ser detenido preventivamente por no prestar la fianza correspondiente. Según fue expuesto, que ambas restricciones de libertad coexistan en un mismo caso, no es óbice para abonar al cumplimiento de la pena ambos términos. Ello, dado que, ambos supuestos ejemplifican una medida de privación de libertad. Así pues, señalamos que el concepto de "restricción de libertad" trasciende los límites de los barrotes carcelarios. Toda vez que, abarca diferentes tipos de medidas preventivas mediante las cuales un imputado se encuentre sin el disfrute de su libertad. Así, conforme fue expuesto, una persona no se exime de estar bajo la custodia del Estado durante el tiempo que se encuentre no procesable. Ello, dado que, la ausencia de procesabilidad no es una circunstancia voluntaria y seleccionada por el imputado. Por tanto, la falta de consentimiento del imputado a la custodia estatal que surge al decretar su falta de procesabilidad constituye una privación de libertad.

**IV.**

Por los fundamentos esbozados y a tenor con el principio de que una persona convicta no permanecerá privada de su libertad más tiempo del que se disponga en la sentencia, determinamos *expedir el presente auto y revocar la determinación recurrida*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones