Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>DANIEL VELÁZQUEZ VALENTIN<br><br>Recurrido | KLCE202400500 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso Núm. A MI2023-0074<br><br>Sobre: Regla 240 |
|---|---|---|

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

*Bermúdez Torres, Juez Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de julio de 2024.

I.

El 6 de diciembre de 2022, el Ministerio Público presentó tres (3) acusaciones contra el Sr. Daniel Velázquez Valentín por hechos ocurridos entre los años 2010 y 2014. Se le imputó un cargo por Maltrato de menores, según tipificado por el Art. 59 de la Ley Núm. 246 de 16 de diciembre de 2011, conocida como la Ley para la Seguridad, Bienestar y Protección de Menores,[1] un cargo de Agresión sexual y otro por Actos lascivos, tipificados estos en los Arts. 133 (a) y 130 (a) del Código Penal de Puerto Rico, respectivamente.[2]

El 2 de octubre de 2023, a petición de la Defensa, se celebró una vista de procesabilidad bajo la Regla 240 de Procedimiento Criminal.[3] En la referida vista, a la cual Velázquez Valentín no compareció, se informó que este tampoco se presentó a la evaluación con el psiquiatra del Estado, el Dr. William Lugo Sánchez. Ante ello,

---

[1] 8 LPRA § 1174.
[2] 33 LPRA § 5191; 33 LPRA § 5194.
[3] 34 LPRA Ap. II, R. 240.

el Foro primario reseñaló **la vista de seguimiento** para el 13 de noviembre de 2023.

En la **vista de seguimiento** celebrada el 13 de noviembre de 2023, esta vez con la comparecencia de Velázquez Valentín, el Dr. Lugo Sánchez declaró que el acusado se encontraba no procesable. Atestó, que, Velázquez Valentín había presentado un deterioro en su salud mental al compararse con su evaluación anterior, y que presentó dificultad para entender los procedimientos y asistir en su Defensa. Ello así, el Foro *a quo* mantuvo paralizados los procedimientos, declaró no procesable a Velázquez Valentín y señaló otra **vista de seguimiento** para el 12 de febrero de 2024.

Así las cosas, en la **vista de seguimiento** celebrada el 12 de febrero de 2024, el Dr. Lugo Sánchez declaró que Velázquez Valentín se encontraba **no procesable permanentemente** por tener un diagnóstico de demencia degenerativa. En la misma fecha,[4] el Tribunal de Primera Instancia emitió *Resolución y Orden,* acogiendo el diagnóstico del psiquiatra del Estado, declaró a Velázquez Valentín no procesable permanentemente y ordenó el cierre y archivo del caso.[5]

El 6 de marzo de 2024, el Ministerio Público presentó *Moción Solicitando Reconsideración.*[6] Solicitó al Tribunal de Primera Instancia que reconsiderara la *Resolución y Orden* del 12 de febrero de 2024, que le concediera un término para consultar con un perito del Departamento de Justicia y que pautara una vista en la que pudiera comparecer para discutir la alegada procesabilidad

---

[4] Notificada el 20 de febrero de 2024.

[5] Ordenó que el señor Velázquez Valentín continuara en libertad bajo supervisión familiar hasta tanto se dispusiera otra cosa bajo su autoridad y discreción que oportunamente tuviera ante su consideración la Ley Núm. 408 de 2 de octubre de 2000, conocida como la Ley de Salud Mental de Puerto Rico, Ley Núm. 408-2000, 24 LPRA § 6152 et seq.

[6] Antes, el 27 de febrero de 2024, el Ministerio Público presentó *Moción Nunc Pro Tunc* solicitando que se enmendara la *Resolución y Orden* del 12 de febrero de 2024 ya que en la misma se hizo constar, contrario a lo ocurrido en la vista, que el Fiscal no se opuso a que el acusado fuera declarado no procesable permanentemente.

permanente de Velázquez Valentín. Adujo que, en la vista celebrada el 12 de febrero de 2024 solicitó, infructuosamente, que se le concediera tiempo para consultar con un perito contratado por el Departamento de Justicia para evaluar los informes del perito de la Defensa y del psiquiatra del Estado y así formular una posición debidamente informada sobre la no procesabilidad permanente de Velázquez Valentín.

El 3 de abril de 2024,[7] el Foro primario declaró No Ha Lugar la *Reconsideración*. Inconforme, el 6 de mayo de 2024, el Ministerio Público acudió ante nos mediante *Petición de Certiorari*. Plantea que, **"[e]l Tribunal de Primera Instancia erró al decretar la no procesabilidad permanente del recurrido en una vista <u>de seguimiento</u> sin notificar a El Pueblo que estaría determinando la capacidad de forma permanente, lo cual atenta lo establecido en *Pueblo* v. *Santiago Torres* [...]".**

El 8 de mayo de 2024 le concedimos un término de diez (10) días a Velázquez Valentín para que mostrara causa por la cual no debíamos expedir el Auto de *Certiorari* y revocar el dictamen recurrido. Luego de concedérsele una breve prórroga, el 5 de junio de 2024, compareció Velázquez Valentín mediante *Memorando en Oposici[ó]n a Petici[ó]n de Certiorari Criminal*.

Contando con el beneficio de la comparecencia de las partes, el expediente judicial, el Derecho y jurisprudencia aplicable, procedemos a resolver.

II.

Consustancial a la garantía fundamental del debido proceso de ley consagrada tanto en la Quinta y Decimocuarta Enmienda de la Constitución federal como en la Sec. 7 del Art. II de la Constitución de Puerto Rico,[8] a ninguna persona puede privársele

---

[7] Notificada el 4 de abril de 2024.
[8] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.

de su libertad tras enfrentar juicio a menos que sea procesable.[9] La Regla 239 de Procedimiento Criminal recoge la limitación de someter a un imputado de delito incapaz de comprender la naturaleza y el propósito de los procedimientos llevados en su contra y, por lo tanto, de defenderse adecuadamente. En específico, dispone que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada". [10]

El Tribunal Supremo ha expresado que, "[e]l término de procesabilidad se refiere a la capacidad mental del acusado al momento de enfrentarse a la naturaleza y al procedimiento criminal en su contra". Esto es, que el acusado puede colaborar efectivamente en la defensa de su caso.[11] La rectora Regla 240 de Procedimiento Criminal, dispone, en lo aquí estrictamente pertinente, lo siguiente:

> REGLA 240. — CAPACIDAD MENTAL Y/O FUNCIONAL DEL ACUSADO; PROCEDIMIENTO PARA DETERMINARLA.
>
> (a) Vista; peritos. En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere evidencia, además de la opinión del representante legal del imputado o acusado, que estableciere mediante preponderancia de la prueba que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá los procedimientos y señalará una vista para determinar el estado mental y/o funcional del acusado. Una vez se señale esta vista, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental y/o funcional. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no

---

[9] *Godinez* v. *Moran*, 509 US 389, 396 (1993); *Pate* v. *Robinson*, 383 US 375, 378 (1966).
[10] 34 LPRA Ap. I, R. 239.
[11] *Ruiz Ramos* v. *Alcaide*, 155 DPR 492, 499 (2001); *Pueblo* v. *Pagán Medina*, 178 DPR 228, 237 (2010). Véase también: E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. III, pág. 348.

menor de tres (3) días antes de la fecha señalada para la vista de que se trate.

b) Efectos de la determinación. Si como resultado de la prueba el tribunal determinare que el acusado está mentalmente y/o funcionalmente capacitado, continuará el proceso. Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada. En aquellos casos en que el tribunal hallare que el imputado o acusado padece de alguna condición que no le permite comprender el proceso y colaborar con su defensa podrá ordenar, de entenderlo necesario, que éste sea ingresado en un centro de adiestramiento para el desarrollo de destrezas de vida independiente. Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental y/o funcional del acusado permite la continuación del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el apartado (a) de esta Regla, y determinará entonces si debe continuar el proceso.[12]

Además de establecer el mecanismo garantista del debido proceso de ley constitucional, la citada Regla 240 de Procedimiento Criminal,[13] impone al juez de instancia el deber ineludible de velar por el fiel cumplimiento de dicho mecanismo.[14] En el caso particular de una determinación de no procesabilidad permanente, en la que existe la potencial liberación o restricción a la libertad sin el debido proceso de ley,[15] se conjugan varios intereses importantes.[16] Por un lado se encuentra el interés legítimo del Estado, bajo su poder de *parens patriae,* de proveerle al individuo el cuidado que por razón de su condición no puede brindarse a sí mismo, incluyendo el proveerle un tratamiento que mejore su condición.[17] Por otro lado, se halla el poder regulador (*police power*) del Estado y su interés de proteger a la ciudadanía en general ante el posible peligro que representa el individuo.[18] Por último, se integra el interés del Estado de prevenir que el individuo se haga daño a sí mismo.[19]

---

[12] 34 LPRA Ap. II, R. 240.
[13] *Íd.*
[14] *Pueblo,* 178 DPR, pág. 239.
[15] El Estado tendría la opción de dejar en la libre comunidad al imputado, iniciar los procedimientos de internación civil, o imponer una medida de seguridad a tenor con la Regla 241.
[16] *Pueblo,* 154 DPR, pág. 313.
[17] *Íd.*
[18] *Íd.*
[19] *Íd.*

Cónsono con lo anterior, del caso *Pueblo* v. *Santiago Torres*, 154 DPR 291 (2001), puede colegirse que, el Foro primario debe señalar una vista con el propósito de determinar la no procesabilidad permanente del imputado, con la debida notificación a las partes, previo al archivo y sobreseimiento de los cargos imputados. En dicho caso, similar al caso ante nos, en la tercera vista de seguimiento el Foro de instancia determinó que el imputado era no procesable permanentemente. Aunque el Tribunal Supremo estuvo conforme con dicha determinación, devolvió el caso al Foro de origen para que celebrara una **vista independiente** para determinar si el imputado era o no procesable de manera permanente. De este modo, todos los comparecientes podrían acudir debidamente preparados para presentar su prueba pericial relativa a la probabilidad de que el imputado advenga procesable en un futuro próximo, y así colocar al Foro juzgador en mejor posición de tomar una decisión fundada y correcta.[20]

El Tribunal, en virtud de ello, al considerar que no hay "probabilidad sustancial de que el imputado llegue a ser procesable en un futuro razonable o de que no es procesable permanentemente" no cabe sino declararlo no procesable de manera permanente.[21] Además, en dicha vista las partes pueden presentar prueba sobre el grado de peligrosidad del individuo dado a su condición mental.[22] Si la vista al amparo de la Regla 240 culmina en una determinación de no procesabilidad,[23] el imputado permanecerá bajo la jurisdicción del tribunal, el cual deberá regirse por lo que dispone la Regla 241.[24]

En fin, que, en atención a las serias consecuencias jurídicas que tiene un dictamen de no procesabilidad permanente, no solo

---

[20] *Íd.*, pág. 313.
[21] *Íd.*
[22] *Íd.*
[23] 34 LPRA Ap. II, R. 240.
[24] *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 366 (2020).

para el procesado, sino para su familia, para la víctima, para la familia de la víctima y la sociedad en general,[25] concluimos que la notificación previa exigida por la Regla 240,[26] lógicamente, no sería suficiente si se limitara a anunciar que se trata de una vista de seguimiento. En cambio, la notificación debe especificar que en la vista a celebrarse se evaluará la posibilidad de un dictamen de no procesabilidad permanente.

III.

Según las constancias del expediente ante nos, tras la incomparecencia del imputado a la vista de procesabilidad al amparo de la Regla 240,[27] celebrada el 2 de octubre de 2023, el Tribunal de Primera Instancia señaló **vista de seguimiento** para el 13 de noviembre de 2023. Llegada la fecha, se celebró la vista en la cual el psiquiatra del Estado -Dr. Lugo Sánchez- encontró no procesable a Velázquez Valentín. El Foro primario acogió las recomendaciones del galeno, determinó que el acusado era no procesable, y ordenó a la Defensa que produjera su expediente médico. También, se acordó que Velázquez Valentín fuera reevaluado por el Dr. Lugo Sánchez el 7 de febrero de 2024. Al final de la vista, el Foro de instancia señaló **otra vista de seguimiento** al amparo de la Regla 240,[28] para el 12 de febrero de 2024.

De la *Minuta* de la vista celebrada el 12 de febrero de 2024 se desprende que el Dr. Lugo Sánchez declaró bajo juramento que el acusado fue evaluado y que revisó los documentos enviados por la Defensa. Fue a raíz de ello, que recomendó al Tribunal de Primera Instancia que encontrara a Velázquez Valentín **no procesable con carácter permanente** por su condición de demencia degenerativa y

---

[25] *Pueblo*, 154 DPR, pág. 314 (Entre las circunstancias a evaluar cuidadosamente está, por ejemplo, "determinar si debido a su condición mental, el imputado constituye un riesgo para sí y para la sociedad").
[26] 34 LPRA Ap. II, R. 240.
[27] *Íd.*
[28] *Íd.*

que no vislumbraba recuperación alguna. No recomendó medidas de seguridad, solo que continuara bajo supervisión de su familia.

Si bien la prueba del perito se había notificado a las partes con anterioridad a la vista, el Ministerio Público no fue advertido previamente, de que en la vista a celebrarse se dilucidaría la no procesabilidad permanente de Velázquez Valentín. En cambio, la notificación a las partes se limitó a señalar otra **vista de seguimiento**. Evidentemente, el Ministerio Público no tuvo la oportunidad de examinar efectivamente la evaluación del psiquiatra del Estado al impedírsele consultar con sus propios peritos y, de así estimarlo, ofrecer la opinión de estos como prueba de impugnación del psiquiatra del Estado. De hecho, durante dicha **vista de seguimiento**, al consignar su oposición, el Fiscal solicitó, sin éxito, un término breve para hacer una consulta con un perito del Ministerio Público a los fines de tener una opinión pericial que no fuera la del perito de la Defensa o del Estado. Sostuvo que, el acusado había sido evaluado en varias ocasiones por el Dr. Lugo Sánchez. Como resultado, algunas veces concluyó que era procesable y otras que no lo era.

Tras una sosegada y minuciosa evaluación del expediente, consideramos que, al así actuar, abusó de su discreción el Foro *a quo*. Sin lugar a duda, luego de haber transcurrido un tiempo razonable sin haber declarado procesable a Velázquez Valentín en las **vistas de seguimiento**, era necesaria una notificación efectiva por parte del Tribunal sobre su intención de impartirle carácter de finalidad al proceso. Así pues, somos del parecer que la acogida de la recomendación del perito por parte del Foro de instancia fue la condición necesaria para que se activara el deber de señalar una vista final con el propósito exclusivo de presentar la prueba pertinente a la procesabilidad o no de Velázquez Valentín.

En fin, la conclusión a la cual llegamos en este caso resulta en el mejor balance de los intereses de Velázquez Valentín con los del Estado de proveerle el cuidado que por razón de su condición no puede brindarse a sí mismo, de proteger a la ciudadanía en general, y de prevenir que el individuo se inflija algún daño.[29] Procede la revocación del dictamen recurrido y la celebración de una vista de no procesabilidad permanente, tal y como demanda la doctrina relevante.

IV.

Por los fundamentos antes expuestos, se *expide* el auto solicitado y se *revoca* la *Resolución* y *Orden* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones

---

[29] *Pueblo,* 154 DPR, pág. 313.